Michael C. SEEPE, Private, United States Marine Corps, Petitioner-Appellee,

v.

DEPARTMENT OF THE NAVY et al., Respondents-Appellants.

No. 74–1799.

United States Court of Appeals, Sixth Circuit.

May 23, 1975.

_____
9. 370 F.Supp. at 589.

John L. Bowers, Jr., U. S. Atty., Chattanooga, Tenn., Carla A. Hills, Asst. Atty. Gen., Leonard Schaitman, Paul Blankenstein, Attys., Dept. of Justice, Washington, D. C., for respondents-appellants.

Don W. Poole, Chattanooga, Tenn., for petitioner-appellee.

Before EDWARDS, CELEBREZZE and LIVELY, Circuit Judges.

EDWARDS, Circuit Judge.

The question presented by this appeal, as we see it, is: Where no emergency, hardship or futility exception is present in a case where an enlisted man claims breach by a branch of the military services of his enlistment contract and he has a statutorily provided appeal within the service which could give complete relief, should a Federal District Court require exhaustion of administrative remedies before granting judicial review?

We answer this question "yes."

Appellee in this case enlisted in the Marine Reserves in 1970, allegedly on the basis of representations made to him by a Marine recruiting sergeant concerning the educational opportunities under the Veterans Administration which he would receive. After completing a year of service in the Marine Reserves, he sought for and did not receive the benefits. The Marine Corps advised him that he had been given wrong information by the recruiting sergeant and that the law did not allow VA educational benefits to reservists. Appellee then tendered a resignation, claiming breach of his enlistment contract. This resignation was not accepted. He then ceased to attend Marine Reserve meetings and thereupon was ordered to active duty. At that point the instant habeas corpus litigation was filed and a stay of his active duty orders was entered.

After a hearing, the District Judge held that there was substantial (if inno-

cent) misrepresentation sufficient to warrant voiding his enlistment contract and entered an order requiring appellee's discharge.

The District Judge's findings of fact pertaining to the misrepresentations are supported by convincing evidence. Although there is evidence to the contrary upon which the government relies, we doubt that the District Judge's findings could properly be held to be "clearly erroneous" if they were the dispositive issue before us.

The government claims, however, that under the law appellant Seepe must first exhaust his remedies within the service before seeking judicial relief. This issue is by no means simple.

The highest board for dealing with personnel problems in the Navy is the Board for Correction of Naval Records. Seepe's administrative review efforts terminated with the Commandant of the Marine Corps. He never appealed to the Board for Correction of Naval Records. Thus at this point the sole question in this appeal is whether or not, under the facts stated above, Seepe had the duty to seek a final disposition from the Board for Correction of Naval Records before bringing this action. The government claims exhaustion of remedies is mandatory and cites and relies upon McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); Noyd v. Bond, 395 U.S. 683, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969); Gusik v. Schilder, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 (1950); and Hodges v. Callaway, 499 F.2d 417 (5th Cir. 1974).

Plaintiff-appellee, arguing that he has done all that should be required, also cites *McKart, supra.* Additionally, he cites United States ex rel. Brooks v. Clifford, 412 F.2d 1137 (4th Cir. 1969); United States ex rel. Norris v. Norman, 296 F.Supp. 1270 (N.D.Ill.1969); and Nason v. Secretary of the Army, 304 F.Supp. 422 (D.Mass.1969).

■ Unfortunately, none of the cases relied upon by either side is dispositive of the issue which this case presents. The first broad principle is, of course,

that where Congress has provided by statute for an administrative remedy capable of granting relief appropriate to the complaint concerned, a complainant is required to exhaust that remedy before turning to the courts. McKart v. United States, *supra,* 395 U.S. at 193, 89 S.Ct. 1657; Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938). The courts have, however, regularly found exceptions to the exhaustion doctrine:

1) Where further administrative review is held to be futile. Hodges v. Callaway, *supra* at 420; Hammond v. Lenfest, 398 F.2d 705, 714 (2d Cir. 1968). *See generally* C. Lunding, Judicial Review of Military Administrative Discharges, 83 Yale L.J. 33, 69–72 (1973);

2) Where the status quo under the administrative decision pending review would itself constitute a hardship or leave the complainant in an emergency situation. McKart v. United States, *supra,* 395 U.S. at 197, 89 S.Ct. 1657; United States ex rel. Brooks v. Clifford, *supra* at 1140–41.

Some courts have also held that where the complaint involved a matter of law only and did not require or involve application of military expertise, the federal courts could exercise jurisdiction. McKart v. United States, *supra,* 395 U.S. at 197–99, 89 S.Ct. 1657; Mindes v. Seaman, 453 F.2d 197, 201–02 (5th Cir. 1971); United States ex rel. Brooks v. Clifford, *supra* 412 F.2d at 1140; Hammond v. Lenfest, *supra* at 715–16.

■ We have no doubt that the Federal District Courts do have habeas jurisdiction to review final decisions concerning induction or enlistment complaints filed by members of the armed services. Gibson v. United States, 329 U.S. 338, 358–59, 67 S.Ct. 301, 91 L.Ed. 331 (1946); United States ex rel. Brooks v. Clifford, *supra* at 1139–40; Hammond v. Lenfest, *supra* at 714.

■ But this is not our real question. Our question is whether that jurisdiction should be exercised before all potentially effective remedies in the service concerned have been exhausted. This

requires a look at the statute creating the Board for Correction of Naval Records and the Congress' purpose behind the statute.

In relevant part the statute says:

*Correction of military records: claims incident thereto*

(a) The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice. Under procedures prescribed by him, the Secretary of the Treasury may in the same manner correct any military record of the Coast Guard. Except when procured by fraud, a correction under this section is final and conclusive on all officers of the United States.

(b) No correction may be made under subsection (a) unless the claimant or his heir or legal representative files a request therefor before October 26, 1961, or within three years after he discovers the error or injustice, whichever is later. However, a board established under subsection (a) may excuse a failure to file within three years after discovery if it finds it to be in the interest of justice.

(c) The department concerned may pay, from applicable current appropriations, a claim for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits, or for the repayment of a fine or forfeiture, if, as a result of correcting a record under this section, the amount is found to be due the claimant on account of his or another's service in the Army, Navy, Air Force, Marine Corps, or Coast Guard, as the case may be.
. . .

10 U.S.C. § 1552 (1970).

Review of this statute and of appellee Seepe's complaint convinces us that the statute intended to and did convey full authority to review Seepe's complaint and provide the remedy—namely, discharge from the armed forces—which he seeks. It is clear, however, that Congress did not intend to deprive the District Courts of subsequent review of Board for Correction of Naval Records decisions. *Nelson* v. *Miller,* 373 F.2d 474, 479 (3d Cir.), *cert. denied,* 387 U.S. 924, 87 S.Ct. 2042, 18 L.Ed.2d 980 (1967); *Ogden* v. *Zuckert,* 111 U.S.App.D.C. 398, 298 F.2d 312, 315 (D.C.Cir.1961); *United States ex rel. Brooks* v. *Clifford, supra* at 1139–40.

Fundamental to the result we reach in this case is the holding of a unanimous Supreme Court in *Gusick* v. *Schilder, supra,* a case involving an attack upon a court martial decision.

If Article 53 had been in force when the habeas corpus proceedings were instituted, the District Court would not have been justified in entertaining the petition unless the remedy afforded by the Article had first been exhausted. An analogy is a petition for habeas corpus in the federal court challenging the jurisdiction of a state court. If the state procedure provides a remedy, which though available has not been exhausted, the federal courts will not interfere. That is not only the holding of the Court in a long line of cases (see Mooney v. Holohan, 294 U.S. 103, 155 [55 S.Ct. 340, 343, 79 L.Ed. 791]; Ex parte Hawk, 321 U.S. 114, 116 [64 S.Ct. 448, 449, 88 L.Ed. 572]); it is the rule which Congress recently wrote into the Judicial Code. 28 U.S.C. § 2254. The policy underlying that rule is as pertinent to the collateral attack of military judgments as it is to collateral attack of judgments rendered in state courts. If an available procedure has not been employed to rectify the alleged error which the federal court is asked to correct, any interference by the federal court may be wholly needless. The procedure established to police the errors of the tribunal whose judgment is challenged may be adequate for the occasion. If it is, any friction between the federal court and the military or

state tribunal is saved. That policy is as well served whether the remedy which is available was existent at the time resort was had to the federal courts or was subsequently created, as indeed is implicit in cases from a state court whose review we denied pending exhaustion of a newly created state remedy. See Walker v. Ragen, 338 U.S. 833 [70 S.Ct. 37, 94 L.Ed. 1342]; Marks v. Ragen, 339 U.S. 926 [70 S.Ct. 613, 94 L.Ed. 1347]. Such a principle of judicial administration is in no sense a suspension of the writ of habeas corpus. It is merely a deferment of resort to the writ until other corrective procedures are shown to be futile. Gusick v. Schilder, 340 U.S. 128, 131–32, 71 S.Ct. 149, 151, 95 L.Ed. 146 (1950).

■ More recently the Supreme Court has restated the exhaustion of remedies doctrine as a prelude to determining whether it barred reliance upon a defense (not fully exhausted) to a criminal prosecution. The Court identified the purposes of the doctrine as 1) avoidance of premature interruption of the administrative process, 2) provision for the agency to apply its expertise and to develop a record, and 3) maintenance of judicial efficiency by elimination of as many complaints as may be through the administrative process prior to judicial review. See McKart v. United States, supra, 395 U.S. at 193–95, 89 S.Ct. 1657.

Still more recently the Fifth Circuit has upheld the exhaustion doctrine in military service cases in a well-considered opinion where Judge Goldberg wrote:

It seems quite clear to us that the ABCMR can, if it determines that Hodges has been illegally discharged, grant him full reinstatement and restoration of all rights, thus in effect making him whole for any injury he might suffer from a wrongful discharge. In addition, appellant Hodges complains of exactly the sort of injury for which the BCMR can supply effective and adequate balm. The gravamen of the complaint is that the Army did not follow the proper regulations in processing his discharge; whether this is viewed as a legal or a factual question, the Army ought to be the primary authority for the interpretation of its own regulations. A decision by the ABCMR that the Army should have followed AR 635–212 might completely obviate the need for judicial review. If, on the other hand, the ABCMR concludes that AR 635–212 is inapplicable to the facts of this case and Hodges then seeks judicial review, the court will at least have a definitive interpretation of the regulation and an explication of the relevant facts from the highest administrative body in the Army's own appellate system. See Nelson v. Miller, 3 Cir., 373 F.2d 474, 480, cert. denied, 1967, 387 U.S. 924, 87 S.Ct. 2042, 18 L.Ed.2d 980; Sohm v. Fowler, 1966, 124 U.S.App.D.C. 382, 365 F.2d 915, 918–919.

*Hodges v. Callaway*, 499 F.2d 417, 422 (5th Cir. 1974) (footnote omitted).

We have recognized earlier that there are cases in the lower federal courts which have excused failure to exhaust remedies available in a military service where the controlling issue was held to be one of law only, and, hence, not one which demanded military expertise. And appellant has argued that here we deal only with contract law and that such cases are applicable. Without passing upon whether such cases represent still another valid exception to the exhaustion doctrine, we believe that (contrary to conscientious objector cases) the facts here involved are entirely service-oriented and that we are confronted by a mixed question of fact and law. In this case the service's development of a factual record and its interpretation of the law as applied to the facts may well prove of value to the reviewing court.

Much of the law requiring exhaustion of remedies in a military context has been developed in circumstances where there were pending court-martial proceedings. This distinction, while important, is not controlling, as shown by the following language from the recent Su-

preme Court opinion in *Schlesinger v. Councilman* :

> To some extent, the practical considerations supporting both the exhaustion requirement in habeas corpus and the federal equity rule barring intervention into pending state criminal proceedings except in extraordinary circumstances are similar to those that underlie the requirement of exhaustion of administrative remedies. *E. g.,* Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51,[58 S.Ct. 459, 463–464, 82 L.Ed. 638] (1948). The latter rule, looking to the special competence of agencies in which Congress has reposed the duty to perform particular tasks, is based on the need to allow agencies to develop the facts, to apply the law in which they are peculiarly expert, and to correct their own errors. The rule ensures that whatever judicial review is available will be informed and narrowed by the agencies' own decisions. It also avoids duplicative proceedings, and often the agency's ultimate decision will obviate the need for judicial intervention. *E. g.,* McKart v. United States, 395 U.S. 185, 194–195,[89 S.Ct. 1657, 1662–1663, 23 L.Ed.2d 194] (1969); Parisi v. Davidson, 405 U.S. 34, 37, [92 S.Ct. 815, 817, 31 L.Ed.2d 17] (1972).
>
> These considerations apply in equal measure to the balance governing the propriety of equitable intervention into pending court-martial proceedings.

Schlesinger v. Councilman, 420 U.S. 738, 757, 95 S.Ct. 1300, 1312, 43 L.Ed.2d 591 (1975).

Additionally, in this record we find no compelling reason for exempting appellee Seepe from the general rule of exhaustion of remedies. He could have secured final administrative review long ago and, in the event of a negative result, he could have presented his case to the District Court. If he had continued attending reserve training sessions while applying for a discharge due to the enlistment misrepresentations, he could have satisfied the exhaustion requirement without interruption of civilian life, thus avoiding ever being confronted by an order to report for active duty.

We recognize, of course, that what might have been does not change what did happen in this case. We also recognize that under 10 U.S.C. § 1552(b) (1970) appellee Seepe might now be held to be barred from any review at all by the Board for Correction of Naval Records unless the Board finds that Seepe's failure to file within three years was excusable "in the interest of justice."

However, we read the affidavit which counsel for the service presented to the District Judge attesting to Seepe's available administrative remedy as conceding that such a finding would be in the interest of justice.

Under the totality of circumstances and in the interest of justice, we follow as nearly as may be the procedures laid down by the Supreme Court in Gusik v. Schilder, *supra,* 340 U.S. at 133–34, 71 S.Ct. 149.

The judgment of the District Court is vacated pending appellee's prompt application for relief to the Board for Correction of Naval Records. Meantime the case is remanded to the District Court to hold on its docket, since the administrative appeal may produce added facts or administrative interpretation of significance to the District Judge. Our order vacating the District Court's judgment is without prejudice to appellee's right to petition the District Court for a stay of his active duty orders pending exhaustion of his administrative remedies. *See* F.T.C. v. Dean Foods Co., 384 U.S. 597, 86 S.Ct. 1728, 16 L.Ed.2d 802 (1966); Schwartz v. Covington, 341 F.2d 537 (9th Cir. 1965).