Application of James BARKLEY for Writ of Habeas Corpus and an Order in the Nature of Mandamus, Petitioner,

v.

John WARNER, Secretary of the Navy, and James R. Schlesinger, Secretary of Defense, Respondents.

Civ. A. No. 74-40039.

United States District Court,
E. D. Michigan, S. D.

Feb. 10, 1976.

Birch & Dean, Kenneth A. Birch, Philip C. Dean, William Rastetter, East Lansing, Mich., for petitioner.

John Patrick Conley, Asst. U. S. Atty., Flint, Mich., for respondents.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

Presently before the Court is an amended petition for a Writ of Habeas Corpus filed on behalf of James Barkley which seeks to prevent the United States Marine Corps from exercising control over the petitioner and removing him from the jurisdiction of this Court to face possible disciplinary proceedings for unauthorized absence in another state. The respondents have filed a reply in opposition to the petition and a renewed motion to dismiss the petition or alternative motion for summary judgment, alleging that petitioner must first exhaust military remedies available to him before a federal court can grant habeas

corpus relief.[1] Petitioner alleges that it would be futile to require him to exhaust any further military remedies at this time.

The following facts are alleged in the petition: Petitioner enlisted in the Marine Corps in May of 1967 and was sent to Vietnam in December of 1967. After suffering some injuries in Vietnam, he was evacuated to a military hospital in Guam and informed that he would be transferred to Great Lakes Naval Hospital for one month pending discharge for medical reasons. Petitioner was transferred to Great Lakes Medical Hospital in May, 1968, but all his records, medical, personnel and pay, were lost by military authorities. Thus, he did not receive any pay and was not taken before a medical board to be evaluated for a medical discharge. Petitioner informed the respondents of the great financial hardship created for him and his dependents by respondents' failure to pay him. In October, 1968, he was transferred to Camp LeJeune in North Carolina, but all his records remained unavailable. Petitioner informed his commanding officer at Camp LeJeune about his expected medical discharge, the lack of pay, and the financial hardship caused by this lack of pay. His commanding officer discouraged petitioner from applying for a hardship discharge because his financial problems would be resolved as soon as the military resumed paying him.

In late October, 1968, petitioner left Camp LeJeune and returned to Michigan to support his wife who was then pregnant. He informed military authorities of his whereabouts, the reasons for his unauthorized departure and indicated that he would return after the birth of his expected child. Petitioner returned voluntarily to military authority in February of 1969. He was court martialed and sentenced to six months confinement for unauthorized absence. There is no indication that petitioner exhausted any military appeals regarding this conviction.

Upon petitioner's release, he reported to Quantico, Virginia under orders and from there to Camp LeJeune. He received no pay from October, 1969 through December, 1969 and in December, 1969, he returned to Michigan to support his family. In 1972, petitioner was arrested by military authorities and returned to Camp LeJeune. A captain informed him that he would not be paid, that his unit would leave shortly on maneuvers without him and that he might as well go AWOL. Petitioner left Camp LeJeune and returned to Michigan. He returned briefly, received a special pay voucher, and learned that court martial proceedings were being initiated against him. He remained at Camp LeJeune for a total of three months and left when he learned that military authorities had never completed the requisite steps to court martial him for his prior absences.

1. Petitioner filed his original petition for a writ of habeas corpus on January 15, 1974, seeking to enjoin his removal by United States Marine Corps personnel from this district to another state. The late Honorable Stephen Roth, United States District Judge, signed a temporary restraining order preventing petitioner's removal from Michigan and ordered respondents to show cause why the petition should not be granted. Although respondents filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure shortly thereafter, Judge Roth's continuing ill health prevented any final disposition of the petition. On September 12, 1974, after Judge Roth's death, petitioner filed an amended petition and complaint for a writ of habeas corpus and order in the nature of mandamus, and a preliminary hearing was held before the Honorable

Thomas P. Thornton, Senior United States District Judge. On October 16, 1974, Judge Thornton issued a preliminary injunction restraining respondents from exercising control over petitioner except for brief periodic phone checks. Petitioner filed a motion for summary judgment on December 14, 1974. The case came under the control of this court upon assuming the docket of the late Judge Roth. Shortly thereafter the United States Supreme Court issued its opinion in *Schlesinger v. Councilman*, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975). The respondents filed an answer in opposition to the petition and a renewed motion to dismiss in May, 1975. A few days later the Court of Appeals for the Sixth Circuit issued its opinion in *Seepe v. Department of the Navy*, 518 F.2d 760.

Again, petitioner returned to Michigan, informing respondents of his whereabouts and requesting that they contact him when his records were in good order. Petitioner was arrested on January 11, 1974 and held in the Flint County Jail pending transfer out of this jurisdiction. This action followed.

Petitioner alleges that respondents have breached the provisions of his enlistment contract by their failure to pay him his salary and that his rights to due process and equal protection of the laws have been violated by respondents' loss of his records, respondents' failure to advise him how to proceed in applying for a hardship discharge when he met the prima facie requirements for such a discharge, and their failure to discharge him for medical reasons. Petitioner urges this court to assume jurisdiction to issue a declaratory judgment that respondents have no legal right to detain petitioner, and to order respondents to discharge petitioner administratively or for medical reasons.[2]

■ Federal courts do not normally entertain petitions for writs of habeas corpus brought by persons in military custody unless all available military appeals have been exhausted. *Gusik v. Schilder,* 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 (1940); *Noyd v. Bond,* 395 U.S. 683, 696, 89 S.Ct. 1876, 1883, 23 L.Ed.2d 631, 644 (1969); *Daniels v. Klesart,* Case No. 5–10095, E.D. Michigan, January 19, 1976. However, where the habeas petitioner is a civilian who challenges the jurisdiction of military authorities to exercise control over him or try him in the military courts, exhaustion is not required. *Noyd v. Bond, supra;* note 8; *Schlesinger v. Councilman,* 420 U.S. 738, 759, 95 S.Ct. 1300, 1313, 43 L.Ed.2d 591, 609 (1975).

In *Schlesinger v. Councilman, supra,* a military prisoner sought to enjoin pending court martial proceedings by bringing a suit for injunctive relief in the federal courts on the ground that he was facing court martial for non-service connected offenses. The court held that Article III courts had subject matter jurisdiction under 28 U.S.C. § 1331 to consider the suit if the requisite jurisdictional amount were met because the general rule that the acts of a court martial are not reviewable by civil courts is subject to the qualifications that the challenged acts be within the scope and duty of the court martial. *Schlesinger* reiterated the importance of the exhaustion requirement for military prisoners bringing petitions for habeas corpus in the federal courts. The court stated that Congress has established the present system of military courts and agencies to deal with specific problems involving military personnel, to develop the facts, to apply the law, and to correct errors.

Accordingly, exhaustion avoids unnecessary use of judicial resources and reduces the necessity of judicial intervention since the petitioner may obtain the requested relief through regular channels. The exhaustion requirement for military prisoners is, thus, analogous to the exhaustion requirement for state prisoners filing habeas corpus petitions under 28 U.S.C. § 2254 with its underlying rationale that state courts are fully as competent as federal courts to consider constitutional issues as well as being the definitive authorities on state law. Similarly, military courts have the necessary expertise to determine if an alleged criminal offense is "service connected", and such a determination by military courts is invaluable in any subsequent collateral review by Article III courts. The *Schlesinger* Court found that since petitioner Councilman had been under military authority at the time that criminal charges were brought against him, it was not unjust to require him to "submit to a system established by Congress and carefully designed to

---

2. The court notes that Judge Thornton signed a preliminary injunction indicating that it was likely that petitioner would prevail on the merits. However, such injunction was issued pri-
or to *Schlesinger* and *Seepe, supra* note 1 and did not specifically excuse exhaustion of military remedies.

protect not only military interests but his legitimate interests as well." *Schlesinger, supra,* p. 760, 95 S.Ct. at p. 1314, 43 L.Ed.2d at p. 610.

In *Seepe v. Department of the Navy,* 518 F.2d 760 (CA6, 1975), the Court held that a former military reservist who had been called to active duty and who contested the validity of his enlistment contract must exhaust administrative remedies by seeking to correct his status through the Board for Correction of Military Records, 10 U.S.C. § 1552, 32 CFT 7.23. *Seepe* also analogizes the exhaustion requirement for military prisoners to the exhaustion requirement for state prisoners, reasoning that exhaustion avoids premature interruption of the administrative process, provides for use of administrative expertise, creates a record and contributes to judicial efficiency. The court's opinion indicates that possible exceptions to the exhaustion requirement would lie where the issue before the court was purely a legal question, or where exhaustion would be futile or where emergency and hardship would result. Petitioner argues that he falls within the latter three categories.

■ The allegations of the petition establish that in 1968 the misplacement of petitioner's military records created great personal and financial hardship culminating in petitioner's conviction for unauthorized absence in 1969.[3] Petitioner has also alleged continued inaction by military authorities with regard to his pay and discharge status in 1969 and in 1972. While petitioner's commanding officer in 1968 may have discouraged him from applying for a hardship discharge, there is no indication that petitioner at any time pursued any administrative remedies. His chosen expedient was to depart from military custody and return to Michigan to support his dependents.[4]

If this court dismisses the instant petition for failure to exhaust administrative remedies, petitioner, who had been leading a civilian life for approximately four years, will be returned to his post of duty in another state and will possibly face disciplinary procedures for his allegedly unauthorized absences from duty between 1969 and January 11, 1974, the date of his arrest. It cannot be doubted that such an event will create hardship for petitioner and his family. However, the court notes that the allegations of the petition show that petitioner himself contributed to and perpetrated the impasse regarding his military status. Petitioner, after release from confinement in 1969, again absented himself from his post. He left again following a second arrest in 1972. It is common knowledge that unraveling of military red tape is a lengthy and sometimes Herculean task. Petitioner's continued presence on base would have eventually forced clarification of his status. Petitioner's claim that his subjection to military authority at the present time would constitute hardship is like that of an accused facing pending criminal charges who absents himself from the jurisdiction of the court and then complains that he was denied a speedy trial.[5]

The Court also finds that petitioner has not shown that exhaustion of presently available military remedies would be futile. Section 1552, Title 10, United States Code, provides that a person seeking to correct his military record should apply to the Board of Corrections of Records within three years after discovering the error, but the Board has the power to excuse failure to apply within the time limits in the interests of justice.[6]

---

3. The record does not show that petitioner appealed this conviction.

4. It is possible that the proper military authority might find that petitioner's conduct was justifiable and excusable under the circumstances.

5. It should be noted that if the facts alleged are true, respondents and their agents may have been equally at fault.

6. Since the Marine Corps has apparently relocated petitioner's records, the petitioner's status can be quickly determined by the appropri-

Moreover, if this court were to excuse exhaustion of military administrative remedies, the Court would have to evaluate petitioner's military records in terms of his pay status and his eligibility for medical or hardship discharge. The affidavits of the parties are in conflict over the conclusions that should be drawn from the exhibits filed in this cause. Without the assistance of a record from an administrative agency having the necessary expertise to evaluate these factual claims, this Court should not make the initial determination as to what the exhibits filed in this cause show with regard to petitioner's payroll status or to his eligibility for medical discharge.

Similarly, the Board for Corrections of Record should decide if petitioner's commanding officer who allegedly discouraged him from applying for a hardship discharge violated military regulations.

This Court is fully cognizant that a portion of the delay involved in resolving petitioner's military status was caused by the duration of the present lawsuit. Resolution of the issues presented by this petition was made more difficult by the fact that three different judges handled the case at different times, by appellate decisions issued during the past year which required the Court to take a different view of the petition than its predecessors, and by the unique factual circumstances presented by the petition.

In view of the necessary military expertise necessary to resolve the factual issues presented by this petition, the petition must be dismissed at this time for failure to exhaust military administrative remedies. Although it is possible that petitioner's factual claims will be quickly resolved by the military, it is not appropriate for this court to retain jurisdiction at the present time by remanding the case to the Marine Corps for resolution in view of the fact that petitioner's commanding officer is located in another jurisdiction. See *Hayes v. Secretary of Defense,* 515 F.2d 668 (CADC 1975).

Having carefully reviewed the allegations of the petition, and having considered such allegations in the light of the relevant case law, this Court is forced to conclude, albeit reluctantly, that petitioner must exhaust his military remedies before he can obtain federal habeas corpus relief. Accordingly, this Court will order the Preliminary Injunction issued in this cause to be dissolved and will grant the respondent's motion to dismiss.

IT IS SO ORDERED.

ate authorities. The court notes that if disciplinary proceedings are initiated against him, 10 U.S.C. § 832(d) provides that an accused shall have the assistance of civil counsel at his expense or military counsel of his own choice (if reasonably available). Otherwise, counsel is provided by the officer exercising general court martial jurisdiction over the command. If convicted, petitioner may apply for a defer-ment of sentence pending exhaustion of appeals, and such deferment can be granted at the discretion of the commanding officer, 10 U.S.C. § 857(d). If, after exhausting administrative and appellate military remedies, petitioner has not received relief, he may file a habeas corpus petition in the Federal District Court in the district of his confinement.