**Michael A. JAMISON, Plaintiff,**

v.

**John C. STETSON, Secretary of the Air Force and the United States of America, Defendants.**

No. 78–CV–548.

United States District Court, N. D. New York.

Dec. 4, 1978.

**50**

O'Connell & Wolfe, P. C., Plattsburgh, N.Y., for plaintiff.

George H. Lowe, U.S. Atty., N.D.N.Y., Syracuse, N.Y., for defendants; Paul V. French, Asst. U.S. Atty., Albany, N.Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

JAMES T. FOLEY, Chief Judge.

Plaintiff, Michael A. Jamison, a Captain in the United States Air Force, commenced this action on October 25, 1978, by the filing of a complaint, such action seeking to restrain the defendants, John C. Stetson, Secretary of the Air Force, and the United States, from taking any action against plaintiff regarding his transfer to Loring Air Force Base, Maine.

On October 25, 1978, an order to show cause for a preliminary injunction was signed and made returnable November 6, 1978. A temporary restraining order was signed and filed on that same date. The grant of temporary injunctive relief was premised upon the second prong of the test for injunctive relief set forth in *Sonesta International Hotels Corp. v. Wellington Associates*, 483 F.2d 247, 250 (2d Cir. 1973); namely:

> a clear showing of . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Accord, Pharmaceutical Society of the State of New York, Inc. v. Lefkowitz*, 586 F.2d 953, 957–958 (2d Cir. 1978); *State of New York v. Nuclear Regulatory Commission*, 550 F.2d 745, 750 (2d Cir. 1977).

The plaintiff's motion for a preliminary injunction was heard November 6, 1978. The submissions are complete. Upon this Court's consideration of the additional affidavits and supporting contentions, as well as a careful review of the precedents, it is my judgment that the temporary restraining order must be vacated, and the relief sought in the order to show cause denied and the complaint dismissed.

The gravamen of plaintiff's complaint is that he was erroneously informed of his Active Duty Service Commitment (ADSC) prior to his attendance at a particular training school. He seeks to have this Court enjoin his transfer from the Plattsburgh Air Force Base to a new Permanent Duty Station in Maine as well as to direct the Secretary to amend his personnel record to reflect an ADSC of February 1, 1979. Such relief if granted would then enable plaintiff to exercise a particular regulation of the Air Force to avoid the assignment to Loring AFB, Maine. The facts are set forth in greater detail below.

### FACTS

Plaintiff was commissioned in the grade of 2d lieutenant with the classification of "career reserve status" on December 17, 1971. At some indeterminate date he underwent pilot training, the consequence of which was the incurrence of a five-year active commitment, expiring in December of 1977.

During the greater part of plaintiff's active service in the Air Force, he has been and continues to be stationed at Plattsburgh AFB, Plattsburgh, New York. Prior to 1977, Captain Jamison's specific responsibilities were those of copilot for the KC–135 aircraft. It is understood that this aircraft is used for aerial refueling by the Strategic Air Command (SAC).

In the Fall of 1976, plaintiff was offered and accepted the opportunity to attend the

KC–135 Pilot Upgrade Program at Castle Air Force Base, California. Upon completion of this additional training, plaintiff would be classified as an aircraft commander.

In accordance with a particular regulation of the Department of the Air Force, effective March 10, 1075, such flying training results in an additional ADSC. 32 C.F.R. § 888c.20. The duration of such additional commitments (1–4 years) depends upon the number of weeks for the particular training period. There is no dispute that Captain Jamison knew that the duration of his schooling was for a period of 71 days; or, more accurately, an eight week course. This course resulted in an ADSC of three years.

In spite of the existence of 32 C.F.R. § 888c.20, Captain Jamison was unaware of the ADSC to be incurred following the completion of his upgrade training. *See* 32 C.F.R. § 888c.8. Therefore, prior to his entry into the upgrade training program on November 24, 1976, Captain Jamison inquired at the Consolidated Base Personnel Office, Plattsburgh AFB regarding his new ADSC. At that time it is contended that he was erroneously informed at the Plattsburgh Air Force Base that his additional commitment was for a period of two years. The giving of the erroneous information by the personnel office is not seriously disputed.

It appears that an official Air Force publication, dated September 1, 1976, A.F.M. 50–5, amended an earlier edition of A.F.M. 50–5, by changing the KC–135 upgrade training course from 7 to 8 weeks. The consequence of an additional week of flying training was to increase the ADSC from 2 to 3 years. Apparently, the amended A.F.M. 50–5 was not received by the personnel office at Plattsburgh AFB until February 10, 1977. It must be further noted that it was not until November 15, 1977, that the Air Force mandated particular counseling of its personnel regarding the ADSC prior to entry upon a given course of training.

Plaintiff completed his training at Castle AFB and returned to Plattsburgh AFB on or about February 2, 1977. Contemporaneous with Captain Jamison's completion of training, appropriate documentation reflecting his new ADSC, February 1, 1980, was entered in his personnel record. *See* 32 C.F.R. §§ 888c.10, 888c.12. Plaintiff states that he did not become aware of his ADSC until several months later—that being sometime in April or May 1977.

Approximately fifteen (15) months later, on August 14, 1978, plaintiff received orders reassigning him to Loring AFB, Maine, effective October 31, 1978. Such transfer was classified as a Permanent Change of Station. Loring AFB is one of five "northern tier" bases at which the SAC maintains a substantial number of the KC–135 aircraft. Plaintiff's assignment to Loring was based upon the following factors: 1) "northern tier" combat aircrew personnel are generally reassigned after three years; 2) Captain Jamison's unit had the greatest number of surplus aircraft commanders in SAC; and 3) Captain Jamison had been at Plattsburgh AFB for approximately five and one-half years.

On August 18, 1978, four days after his official notification of transfer, Captain Jamison requested that his ADSC be changed from February 1, 1980 to February 1, 1979. This change would reflect a two-year ADSC. This request, presumably in accordance with Air Force regulations, was processed administratively to the Air Force Manpower & Personnel Center and denied on September 15, 1978.

In the first instance, plaintiff's desire for the February 1, 1979 ADSC date would, in accordance with an Air Force regulation known as the "7 day option," enable him to refuse reassignment to Loring inasmuch as he would be within one year of completing his ADSC.

Having failed to secure a change in his ADSC through the Air Force Manpower & Personnel Center, plaintiff sought to remedy the alleged injustice arising from the erroneous information regarding his ADSC by application to the Air Force Board for Correction of Military Records (AFBCMR).

This application was dated October 18, 1978. *See* 10 U.S.C. § 1552; 32 C.F.R. §§ 865.1–865.18. There is no dispute on the record as to the plaintiff's exhaustion of remedies *prior* to filing the AFBCMR application (*see* 32 C.F.R. § 865.6); nor is their any dispute that the AFBCMR is the proper administrative forum for the type of relief sought by the plaintiff.

It is noted, however, that defendants have admitted that in practically all instances, decision by the Board takes from 12 to 18 months. Inasmuch as this delay would moot plaintiff's claim for relief for all purposes, this action was commenced on October 25, 1978.

## DISCUSSION

■ As previously noted, the grant of temporary injunctive relief was based upon the alternative test set forth in *Sonesta*. It is further noted, however, that our precedents also require a clear showing of irreparable harm, without regard to the serious question going to the merits standard. *State of New York v. Nuclear Regulatory Commission, supra,* 550 F.2d at 750.

Determination of the presence of sufficiently serious questions upon the merits to make them a fair ground for litigation involves questions of a jurisdictional nature, both from the standpoint of reviewability alone, as well as consideration of the principles regarding complete exhaustion of administrative remedies.

As a threshold matter, it is noted that plaintiff does not set forth any particular jurisdictional predicate for the Court to entertain his claim for injunctive and declaratory relief. The complaint does allege that plaintiff is being deprived of his liberty in violation of the due process clause. *See generally Turpin v. Mailet,* 579 F.2d 152 (2d Cir. 1978), *vacated and remanded,* 439 U.S. 974, 99 S.Ct. 554, 58 L.Ed.2d 645 (1978).

■ More to the point, however, is the question of subject matter jurisdiction from the standpoint of review of agency action. The Administrative Procedures Act, 5 U.S.C. §§ 701–706, itself is not an independent jurisdictional provision inasmuch as the 1976 amendment to 28 U.S.C. § 1331(a) [Pub.L. 94–574, 90 Stat. 2721] has largely swept away the rationale for finding such an implied jurisdictional grant in the provisions of the APA. *Califano v. Sanders,* 430 U.S. 99, 105–06, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

■ The subject matter of this litigation, however, entails review of military personnel decisions. And, in such circumstances, our precedents are well-settled that the judicial branch of government should hesitate to interfere with matters of legitimate military concern. *See Orloff v. Willoughby,* 345 U.S. 83, 94, 73 S.Ct. 534, 97 L.Ed. 842 (1953); *Ornato v. Hoffman,* 546 F.2d 10 (2d Cir. 1976); *United States ex rel. Schonbrun v. Commanding Officer,* 403 F.2d 371 (2d Cir. 1968), *cert. denied,* 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969). Thus, in *Ornato* and *Schonbrun,* the Court of Appeals, Second Circuit, focused upon the applicability of the APA to military decisions with particular emphasis upon those matters which are discretionary and beyond review by the judiciary. *See* U.S.C. § 701(a)(2). In my judgment, the matter of personnel duty assignments within the military is discretionary and beyond the reviewing powers of this Court. Moreover, the assignment of Captain Jamison to Loring AFB is clearly a matter touching upon the national defense; and, as such, is wholly beyond the judicial competence for purposes of review.

■ Our precedents have established two areas in which judicial review is available: 1) habeas corpus in conscientious objector cases; and, 2) where the armed forces have violated their own regulations. *Ornato v. Hoffman, supra,* 546 F.2d at 14; *Smith v. Resor,* 406 F.2d 141, 145–47 (2d Cir. 1969); *Hammond v. Lenfest,* 398 F.2d 705, 715 (2d Cir. 1968).

Plaintiff does not seek relief by way of habeas corpus; nor, would such relief be proper at this time inasmuch as Captain Jamison cannot fairly contend that his present "restraint" is unlawful in light of

the fact that by his own contention, he is lawfully in the "custody" of the Air Force at least until February 1, 1979.

Additionally, this is not a matter wherein the Air Force can be considered to have violated its own regulations. Those regulations pertaining to the duration of Captain Jamison's ADSC, as well as the entry of such ADSC upon his personnel records were in accordance with the then official and applicable regulations. Plaintiff does not contend otherwise. Moreover, in my judgment, the erroneous information admittedly furnished Captain Jamison at the local Air Force Base is not tantamount to a breach of the Air Force's self-imposed regulations. Finally, until such time as the Air Force regulations required particular counseling regarding the ADSC (November 1977), Captain Jamison was presumed to have knowledge of the existing regulations. *See Wilkes v. Dinsman,* 7 How. 89, 48 U.S. 89, 126, 12 L.Ed. 618 (1849); *DeLong v. Davis,* 261 F.Supp. 860, 862 (W.D.Tex.1966).

The reviewability of decisions by the AFBCMR, however, presents a different question. There is little doubt that the decisions of the civilian boards created pursuant to 10 U.S.C. § 1552 are reviewable in the federal courts. *See Seepe v. Department of the Navy,* 518 F.2d 760, 763 (6th Cir. 1975); *Hodges v. Callaway,* 499 F.2d 417, 423 (5th Cir. 1974); *Hoorwitz v. Resor,* 329 F.Supp. 1050 (D.Conn.1970), *aff'd,* 445 F.2d 1407 (2d Cir. 1971).

There is, however, considerable doubt as to the reviewability of military personnel decisions, absent exhaustion of administrative remedies, *viz.,* resort to the appropriate civilian review boards under 10 U.S.C. § 1552. *See Montgomery v. Rumsfeld,* 572 F.2d 250, 252–54 (9th Cir. 1978) and cases cited therein.

This Court's research has not disclosed any authoritative precedent from the Court of Appeals, Second Circuit; although, two district courts have held that resort to the civilian review boards is not a prerequisite to a request for relief in federal court. *Williams v. Forelke,* 356 F.Supp. 591, 592–

93 (S.D.N.Y.1973), *aff'd,* 490 F.2d 998 (2d Cir. 1974); *United States ex rel. Joy v. Resor,* 342 F.Supp. 70, 72 (D.Vt.1972) (Oakes, Circuit Judge, sitting by designation).

Nevertheless, given the variety of contexts in which the exhaustion principle has arisen in the military cases, the application of wooden rules would be inapposite. Therefore, for purposes of this case, the Court will follow what it believes is well-considered reasoning as set forth in *Montgomery v. Rumsfeld, supra.* Therein, Judge Wallace concluded:

> [s]ince an appeal to the ABCMR is not a statutorily mandated prerequisite to federal court jurisdiction, the district court was entitled to determine, in the first instance, whether exhaustion was required and, if so, whether in its discretion, it should retain jurisdiction pending exhaustion.

*Id.* at 254. In short, the question of whether exhaustion is required should be analyzed on a case by case basis. *See McGee v. United States,* 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971).

Such an analysis, however, does not cause an abandonment of the general rule; namely, where Congress has provided an administrative remedy by statute which is capable of granting the relief sought, a complainant must normally exhaust such remedy before resorting to the federal courts. *See Seepe v. Department of the Navy, supra,* 518 F.2d at 762–64.

In the situation here, plaintiff has submitted an application for correction of his military record to the AFBCMR. To date, no final determination has been made by that body.

Plaintiff's affidavit and moving papers essentially argue that the administrative remedy before the Board would be futile and inadequate because the admitted delay in those administrative proceedings would necessarily result in his remaining in the Air Force well beyond his desired ADSC of February 1, 1979. *See generally, Plano v. Baker,* 504 F.2d 595 (2d Cir. 1974); *Hammond v. Lenfest, supra,* 398 F.2d at 714.

Given the factual posture herein, these contentions to my mind are without merit. *See Sherengos v. Seamans,* 449 F.2d 333, 334 (4th Cir. 1971).

By his own admission, plaintiff learned of his three-year ADSC sometime in early April or May 1977—*fifteen months prior* to his application for the administrative relief designed to change his ADSC date. Ostensibly at that time he was content to remain at Plattsburgh AFB until February 1, 1980. Given the fact that he *first* objected to his three-year ADSC only upon notification of transfer to Loring AFB, his statement that he did not wish to "spotlight" himself earlier is inexplicable. And, by his own affidavit, Captain Jamison now admits to rejecting an offer by the Air Force to permit him to remain at Plattsburgh until February 1, 1980. By these inconsistent acts, Captain Jamison apparently seeks to hunt with the hounds and run with the hare. He cannot have it both ways.

■ The Court underscores the above conclusion with the further observation that one cannot render an available remedy inadequate by not invoking it in a timely manner; or, by voluntarily foregoing it. *Cf. Commissioner v. Shapiro,* 424 U.S. 614, 634 n. 15, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976).

■ There is no reason to exempt plaintiff from the general rule of exhaustion. Had he initiated his administrative remedies in the Spring of 1977, he could have secured his administrative review long ago; and, if a negative result was forthcoming, court review might be entertained thereafter. *See Seepe v. Department of the Navy, supra,* 518 F.2d at 765.

The delay that seems inexcusable under the circumstances points up the salutary rationale for the exhaustion doctrine as defined in *McKart v. United States,* 395 U.S. 185, 193–95, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) and *McGee v. United States, supra,* 402 U.S. at 483–88, 91 S.Ct. 1565. For purposes of this case, two factors are critical: 1) an agency's decision may obviate the need for judicial intervention; and, 2)

the exhaustion requirement allows the administrative process and its expertise to operate as it should in the first instance and not be deliberately flouted.

Unquestionably, the 10 U.S.C. § 1552 review boards have broad authority over a wide variety of complaints of military injustice. *Sherengos v. Seamans, supra,* 449 F.2d at 334. Moreover, during the hearing upon plaintiff's motion for the preliminary injunction, defense counsel from the Office of the Judge Advocate General, United States Air Force, stated in open court that relief was granted by the board in more than 60% of the cases reviewed.

The element pertaining to flouting of the administrative process is also pertinent here. Of course, this Court does not consider the circumstances of Captain Jamison's avoidance of the administrative processes on a par with the egregious flouting of the administrative processes evidenced in *McGee.* Nevertheless, in the context of those cases involving active duty military personnel, wherein we are reminded that "judges are not given the task of running the [armed forces]," *Orloff v. Willoughby, supra,* 345 U.S. at 93, 73 S.Ct. 534, 540, to allow judicial review in circumstances such as here would only encourage purposeful delays in initiating the appropriate administrative relief with the effect of conferring upon the federal courts the primary responsibility of deciding questions of fact generally beyond their competence. "Such a default directly jeopardizes the functional autonomy of the administrative bodies on which Congress has conferred the primary responsibility to decide questions of fact . . . ." *McGee v. United States, supra,* at 487, 91 S.Ct. at 1570.

It also follows as noted previously that in order to facilitate meaningful judicial review, the review boards should be afforded the opportunity to develop a factual record and apply their own expertise. The record consists of plaintiff's affidavits and supporting documents disclosing the administrative steps taken to date. Similar affidavits and papers have been filed on behalf of other officers who allege that they were

also misinformed of their ADSC dates following upgrade training.

In spite of the factual simplicity, this Court is wholly without the benefit of knowing what factors the AFBCMR may employ in reaching its determinations. For the above reasons, therefore, this Court must decline the invitation to substitute its judgment for that of the board.

In sum, it is my judgment that plaintiff has not presented any compelling reasons to justify a departure from the general rule mandating exhaustion of remedies.

■ Plaintiff's showing of a balance of hardships tipping decidedly in his favor as well as irreparable harm relies upon the following factors: 1) transfer to Loring AFB would separate plaintiff from his family who would be compelled to return to his wife's home State of Kentucky; and, 2) transfer to Loring AFB would necessitate sale of plaintiff's home in Plattsburgh, New York. In my judgment, these factors are not uncommon to the regimen of military life; and, as such, do not create any exceptional circumstances warranting injunctive relief. Similarly, I cannot find any hardship or irreparable harm arising from plaintiff's remaining in the Air Force for an additional year, especially under the circumstances where he appeared content to do so for a period of fifteen months without formal complaint.

■ By contrast, the balance of hardships tip decidedly in favor of the defendants. The defendants, by affidavit, have shown: 1) that the cost of the upgrade training received by Captain Jamison was $63,000; 2) that Air Force ADSC's are established to effectively allocate officer personnel resources, to insure a level of experience necessary to accomplish a given mission and to assure a reasonable return on public funds expended for training purposes; 3) that pilot assignments to "northern tier" bases are mostly assigned to SAC; 4) that "northern tier" aerial refueling units are essential to the combat readiness of SAC; 5) that non-volunteer assignments to Loring AFB, apparently not too desirable

a duty station, foster resignations; and 6) that the problems of assignment to the "northern tier" bases, already serious, may worsen if more pilots begin to challenge their ADSC upon notification of transfer there. In my judgment, these factors outweigh the showing of hardship and irreparable harm made by the plaintiff.

The Court explored the questions presented at some length. This opinion does not seek to minimize the unfortunate circumstance surrounding Captain Jamison and his fellow officers who relied upon the erroneous information furnished them nor does this opinion in any way seek to disparage Captain Jamison. To his credit, the Air Force regards Captain Jamison as an exceptional officer who is serving in the Air Force with distinction and competence.

The overriding concern, however, is that the federal judiciary must be sensitive to avoid undue interference with matters of legitimate military interest and administration. In sum, therefore, this Court holds that: 1) it has no authority to review the propriety of plaintiff's duty assignment to Loring AFB; 2) plaintiff has failed to show any compelling reason warranting departure from the general rule requiring complete exhaustion of administrative remedies; and 3) plaintiff has failed both to persuade this Court that the balance of hardships tip decidedly in his favor; and, that he will suffer irreparable harm.

■ The final question to be decided is whether this Court should retain jurisdiction pending completion of administrative remedies before the AFBCMR; and, whether this Court should stay plaintiff's transfer to Loring AFB pending actions by the AFBCMR. Apparently, such power is within the discretion of the district courts. *See Montgomery v. Rumsfeld, supra,* 572 F.2d at 254 and n. 4; *Seepe v. Department of the Navy, supra,* 518 F.2d at 765. In my judgment, however, the traditional reluctance of the federal courts to interfere in matters primarily for military concern, plaintiff's untimely application for administrative relief, and, the grave question of national security inherent in plaintiff's contemplated

transfer to Loring AFB, furnish persuasive grounds for dismissal of the complaint as well as to deny any application for stay of plaintiff's orders pending completion of review by the AFBCMR.

In accordance with Rule 52(a), Fed.R.Civ. Pro., the foregoing memorandum-decision constitutes the Court's findings of fact and conclusions of law. Plaintiff's order to show cause and complaint are hereby dismissed. However, to allow sufficient time for the plaintiff to file a Notice of Appeal from the denial of injunctive relief, and to seek further stay in the Court of Appeals, Second Circuit, if he be so advised, the order herein is stayed, with continuance of the temporary restraining order, until December 12, 1978 at 2:00 P.M. and then to expire. *See* Rule 8(a), Fed.R.App.Pro.

It is so Ordered.