Richard WATERVAL, Petitioner,

v.

**DISTRICT COURT IN AND FOR EL PASO COUNTY, Colorado, in the Fourth Judicial District, and the Honorable Bernard R. Baker, one of the Judges thereof, Respondents.**

No. 80SA332.

Supreme Court of Colorado.

Oct. 27, 1980.

Rehearing Denied Nov. 17, 1980.

*Springs,* 195 Colo. 44, 575 P.2d 835 (1978); *People v. Blue,* 190 Colo. 95, 544 P.2d 385 (1975); *Bolles v. People,* 189 Colo. 394, 541 P.2d 80 (1975).

**6**

Kane, Donley & Wills, Lee R. Wills, Colorado Springs, for petitioner.

Orville A. Kenelly, Colorado Springs, for respondents.

QUINN, Justice.

In this original proceeding under C.A.R. 21, Richard Waterval (petitioner) seeks relief in the nature of prohibition against the respondent district court on the ground that its assertion of jurisdiction over him for transacting business in the State of Colorado violates due process of law. We issued a rule to show cause. We now determine that the district court may constitutionally exercise jurisdiction over the petitioner under the Colorado long–arm statute, section 13–1–124(1)(a), C.R.S.1973, and discharge the rule.

## I.

Petitioner is an attorney licensed to practice law in Virginia. He, Willard J. Miller and Potomac Investment Advisors, Ltd., are defendants in pending litigation in the district court of El Paso County. The complaint was filed by Janet S. Stephens (Mrs. Stephens) and alleges that the petitioner was negligent and breached his fiduciary duty in relation to the establishment and administration of a discretionary investment account, thereby causing a substantial money loss to Mrs. Stephens. The facts underlying the jurisdictional issue in this matter can be reconstructed from testimony presented to the court on petitioner's motion challenging jurisdiction.[1]

In 1970 petitioner performed legal services for Mrs. Stephens in connection with her deceased husband's estate while Mrs. Stephens was still a resident of Virginia. Part of these services consisted of establishing and overseeing the administration of a discretionary investment account for Mrs. Stephens with the American Bank at Arlington, Virginia. In 1972 Mrs. Stephens moved to Colorado. However, the attorney–client relationship continued. Petitioner reviewed several documents relative to the sale of Mrs. Stephens' Virginia home and in January 1973 he handled the closing for that sale. Upon petitioner's advice the cash proceeds from the house sale were added to the discretionary investment account. The petitioner and Mrs. Stephens exchanged correspondence over these matters and petitioner sent bills to Mrs. Stephens for services performed in connection with her deceased husband's estate and the house sale. Mrs. Stephens remitted payment to petitioner by checks on her account at a Colorado bank.

Early in 1973 Willard Miller, a trust officer of the Virginia bank overseeing the Stephens' discretionary investment account, advised petitioner that he was leaving the bank in order to establish his own investment firm, Potomac Investment Advisors, Ltd., at McLean, Virginia, and that he was

interested in soliciting the Stephens account. Petitioner contacted Mrs. Stephens by placing telephone calls to her in Colorado and on several occasions they discussed the feasibility of transferring her assets to Miller's new investment service. On February 20, 1973, petitioner mailed the proposed investment contract, along with an explanatory letter of its general provisions, to Mrs. Stephens at her Colorado address. Pursuant to petitioner's letter, Mrs. Stephens executed the contract on February 22, 1973, and returned it to him by mail. Petitioner reviewed the investment contract and transfer–documents, confirmed the transfer of funds from the Virginia bank to Potomac Investment Advisors, Ltd., and then delivered the executed documents to Miller. Petitioner later billed Mrs. Stephens for these services and, once again, she remitted payment to him by check drawn on her Colorado account.

Shortly after the investment account with Potomac Investment Advisors, Ltd., was established, Mrs. Stephens, acting on the joint recommendation of petitioner and Miller, consented to the liquidation of the account assets and their reinvestment in real estate investment trusts. Quarterly reports on the investment account were sent to Mrs. Stephens and petitioner. Petitioner periodically exchanged phone calls with Mrs. Stephens about the account and informed her that he was in frequent contact with Miller. Toward the end of 1973, the quarterly reports from Miller indicated a steady decline in the market value of the investment assets. According to Mrs. Stephens, she telephoned the petitioner about the declining assets and he relieved her concern and said that he would discuss the matter with Miller. Petitioner, however, failed to take corrective action to minimize the losses.

Mrs. Stephens commenced an action against petitioner in July 1979. The summons and complaint were served personally on him in his office in Falls Church, Virginia. The claim against petitioner alleges, in pertinent part, as follows:

---

1. Our discussion of the facts relates to their significance for jurisdictional purposes only, and intimates nothing in regard to the merits of this controversy.

"As Plaintiff's attorney, the Defendant, Waterval, actively recommended the transfer of Plaintiff's assets to Potomac Investment Advisors and actively recommended that the portfolio be overconcentrated in the real estate investment trust area.

"Subsequent to the overconcentration, Defendant, Waterval, was kept informed on the status of the account and had continuous contact with the Defendants, Potomac Investment Advisors Ltd. and Willard J. Miller, concerning the account.

"Despite his active role as an attorney and investment advisor to Plaintiff, the Defendant, Richard A. Waterval, took no steps to advise the Plaintiff to take corrective action when the need for such became obvious, and made no requests or demands of the other Defendants to minimize losses in the account, even though he had a duty to do so.

"As a direct and proximate result of the actions and inactions of the Defendant, Richard A. Waterval, and as a direct and proximate result of his failure to carry out the fiduciary obligations owed to the Plaintiff, the Plaintiff has been damaged in the amount of $127,000.00."

The petitioner filed a motion to quash the summons, contending that the court's exercise of *in–personam* jurisdiction was invalid. The district court conducted an evidentiary hearing, considered Mrs. Stephens' testimony and the petitioner's deposition, and denied the motion. It concluded that the petitioner transacted business in Colorado with Mrs. Stephens and caused important consequences to her in the state; therefore, the exercise of jurisdiction was proper under provisions of section 13–1–124, C.R.S.1973. Original proceedings followed in this court.

We conclude that the district court's exercise of jurisdiction over the petitioner comported with due process of law under the federal and state constitutions. *U.S. Const.* Amend. XIV; *Colo. Const.* Art. II, Sec. 25.[2]

## II.

Section 13–1–124(1)(a), C.R.S.1973, provides:

"Engaging in any act enumerated in this section by any person, whether or not a resident of the State of Colorado, either in person or by agent, submits such person ... to the jurisdiction of the courts of this state concerning any cause of action arising from: (a) the transaction of any business within this state ...."

In enacting the long–arm statute, the Colorado legislature intended to extend the jurisdiction of Colorado courts to the fullest extent permitted by the due process clause of the United States Constitution. *Safari Outfitters, Inc. v. Superior Court*, 167 Colo. 456, 448 P.2d 783 (1969). Due process requires that in order to subject a non–resident defendant to an *in–personam* judgment, the defendant "have certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). A person need not be physically present within the state in order to transact business therein. Contact with the forum state by telephone or mail may furnish the necessary minimum contacts essential for the exercise of jurisdiction under the transaction–of–business standard. *E. g., McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *White–Rodgers Co. v. District Court*, 160 Colo. 491, 418 P.2d 527 (1966).

2. The district court did not attempt to exercise jurisdiction over the petitioner under section 13–1–124(1)(b), C.R.S.1973, which provides that the commission of a tortious act in Colorado is a submission to its jurisdiction. Consequently, we do not address the issue whether jurisdiction validly could be asserted under the tort provisions of the long–arm statute. Compare *Ferrari v. District Court*, 185 Colo. 136, 522 P.2d 105 (1974); *Lichina v. Futura, Inc.*, 260 F.Supp. 252 (D.Colo.1966), with *Jenner and Block v. District Court*, 197 Colo. 184, 590 P.2d 964 (1979); *Vandermee v. District Court*, 164 Colo. 117, 433 P.2d 335 (1967); *see Kulko v. Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978).

■■ Where a single act or a minimum contact is the basis of jurisdiction, we have utilized a three–pronged test in determining whether the activity of the non–resident falls within the limits of *in–personam* jurisdiction:

> "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or of causing important consequences in that state. Second, the cause of action must arise from the consequences in the forum state of the defendant's activities. Finally, the activities of the defendant or the consequences of those activities must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Van Schaack v. District Court*, 189 Colo. 145, 147, 538 P.2d 425, 426 (1975), quoting *White Lumber Sales, Inc. v. Sulmonetti*, 252 Or. 121, 448 P.2d 571 (1968).

*Accord, Mr. Steak v. District Court*, 194 Colo. 519, 574 P.2d 95 (1978); *At Home Magazine v. District Court*, 194 Colo. 331, 572 P.2d 476 (1977); *Duckworth v. M. M. Cole Publishing Co.*, 38 Colo.App. 33, 552 P.2d 520 (1976). "[W]here there are substantial continuous contacts with the forum state, jurisdiction may be found even when the cause of action does not arise out of the forum related activity." *Tucker v. Vista Financial Corp.*, 192 Colo. 440, 443, 560 P.2d 453, 456 (1977); *see Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *Wilkerson v. Fortuna Corp.*, 554 F.2d 745 (5th Cir. 1977), *cert. denied*, 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977).[3]

The instant case does not neatly fit into either the "single contact" or "continuous contact" category. The petitioner's Colora-do activities in relation to Mrs. Stephens extended over a period of approximately two years but were less than continuous although more than singular. And the cause of action arises only in part from the consequences of petitioner's activities in this state—his initial transmission of the investment contract to Mrs. Stephens, and his prior and subsequent communications and actions regarding that contract. Part of the legal predicate for the cause of action relates to the petitioner's activities in Virginia—his supervision of the asset transfer to Miller and his subsequent action or inaction with respect to the monitoring of the investment contract. Recognizing that the resolution of jurisdictional issues of this type frequently involves an *ad hoc* analysis of the facts, *Kulko v. Superior Court of California*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *Elliot v. Edwards Engineering Corp.*, 257 F.Supp. 537 (D.Colo.1965) aff'd, 364 F.2d 991 (10th Cir. 1966); *Colorado Builder's Supply Co. v. Herman Brothers Construction Co.*, 134 Colo. 383, 304 P.2d 892 (1956), we must apply basic principles of *in–personam* jurisdiction to the evidence adduced at the motion hearing and determine whether the district court's exercise of jurisdiction over the petitioner passes constitutional muster.

### III.

Initially, we note that the evidence in the record adequately demonstrates the petitioner's purposeful election to cause important consequences in Colorado. His was not a single, isolated act, the effects of which occurred fortuitously in this state. *Cf., World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (sale of automobile by corporation in

---

**3.** The principles pertaining to a state's exercise of *in-personam* jurisdiction over a foreign corporation have been summarized as follows:

"If there are substantial contacts with the state, for example a substantial and continuing business, and if the cause of action arises out of the business done in the state, jurisdiction will be sustained. If there are substantial contacts with the state, but the cause of action does not arise out of these contacts, jurisdiction may be sustained. If there is a minimum of contacts, and the cause of action arises out of the contacts, it will normally be fair and reasonable to sustain jurisdiction. But if there is a minimum of contacts, and the cause of action does not arise out of the contacts, there will normally be no basis of jurisdiction, since it is difficult to establish the factors necessary to meet the fair and reasonable test." 2 *J. Moore, Federal Practice* ¶ 4.25[5] (1980).

New York insufficient to support exercise of Oklahoma jurisdiction over corporation in products liability suit for injuries sustained in Oklahoma accident). Nor was the petitioner's contact with the forum state thrust upon him against his will. *See Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Rather, petitioner freely and deliberately chose to continue in Colorado an attorney–client relationship which originated in Virginia.

The petitioner's contacts with Mrs. Stephens in Colorado, while not continuous, did extend over the years 1972 and 1973; they were personal in character and resulted in a tangible and monetary benefit to petitioner; and they were intended to, and did in fact, impact directly upon the legal and financial interests of a Colorado resident. The nature and duration of petitioner's activities in relation to a Colorado resident readily distinguishes this case from *Safari Outfitters v. Superior Court, supra*, where all the non–resident's activities central to the resident's claim for breach of contract were directed from a Chicago office to persons outside Colorado. Under these circumstances, the petitioner's activities in connection with the forum state were such that he reasonably could anticipate being held answerable in this state for those activities. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 296, 100 S.Ct. at 567, 62 L.Ed.2d at 501.

■ Next, it is apparent that the cause of action here stems in part from the adverse consequences of petitioner's legal and financial counseling directed to a Colorado resident during the two year period. Assuming *arguendo* that petitioner's activities in Virginia might be considered as "the center of gravity" of the controversy, or that Virginia might be the most convenient location for litigation, these considerations relate essentially to choice of law and selection of forum, and not to personal jurisdiction. *Hanson v. Denckla*, 375 U.S. at 254, 78 S.Ct. at 1290, 2 L.Ed.2d at 1298. Nor is it significant for jurisdictional purposes that the contract had not yet been executed by Potomac Investment Advisors, Ltd., when Mrs. Stephens signed it in Colorado:

"[E]ven though the 'last act,' such as the signing of a contract, for example, may have occurred outside the geographical confines of the forum state, nevertheless the statutory test of a claim arising out of the transaction of any business within the state may still be met by showing *other* 'purposeful acts,' performed within the forum state by the defendant in relation to the contract, even though such acts were preliminary, or even subsequent, to the execution of the contract itself." *Knight v. District Court*, 162 Colo. 14, 20, 424 P.2d 110, 112–13 (1967).

■ The following activities of petitioner produced consequences in this state that are significant for jurisdictional purposes: petitioner's telephone contacts and correspondence with Mrs. Stephens about the investment contract prior to its execution; the transmittal of the contract to her for her signature–the incipient act underlying the cause of action–and petitioner's request that it be returned to him for review and implementation; and his subsequent communications with her by mail and telephone about the investment assets until their sudden decline in value in late 1973 and early 1974. Supplementing these in–state activities is the petitioner's failure to communicate to Mrs. Stephens about the need for corrective action to offset the 1973–74 losses. With a professional relationship of substantial duration and the client's claimed reliance upon her attorney's advice with respect to the client's financial interests, the attorney's failure to communicate with the client or to take any action in regard to the client's interests may be as productive of adverse consequences to the client in the forum state as patently unreasonable advice personally delivered in that state or improper conduct physically performed therein.

We are satisfied that the above–described activities of the petitioner and their consequences to a Colorado resident provide a sufficient connection with this state so as to render reasonable the exercise of *in–personam* jurisdiction over the non–resident petitioner. *Mr. Steak v. District Court, supra;*

*Van Schaack Co. v. District Court, supra; At Home Magazine v. District Court, supra; Duckworth v. M. M. Cole Publishing Co., supra;* Restatement (Second) of Conflict of Laws, § 37 (1971). We conclude, therefore, that the exercise of jurisdiction by the district court under the circumstances of this case comports with basic notions of fair play and substantial justice implicit in due process of law.

The rule to show cause is discharged.