Michael MANSFIELD

v.

Honorable Verne ORR, Secretary of
the Air Force.

Civ. A. No. N–82–1543.

United States District Court,
D. Maryland.

June 25, 1982.

William Connelly, Oxon Hill, Md., for plaintiff.

Glenda G. Gordon, Asst. U. S. Atty., D. Md., Baltimore, Md., and Captain Thomas J. Fiscus of General Litigation Div., U. S. Air Force, Washington, D. C., for defendant.

NORTHROP, Senior District Judge.

This matter comes before the Court subsequent to the Order of September 14, 1981, dismissing the complaint for declaratory and injunctive relief filed by plaintiff on August 27, 1981 in Civil Action No. N–81–218, because of plaintiff's failure to exhaust his administrative remedies before the Air

Force Board of Correction of Military Records (the "Correction Board"). Contemporaneously therewith, the Court entered an order enjoining the Secretary of the Air Force from calling plaintiff to active duty during the pendency of the proceedings before the Correction Board. It had been hoped the controversy between plaintiff and the Air Force could be resolved during the administrative proceeding on other than purely mechanical rules of contract law. The renewed presence of both of the parties in this newly-filed action evidences that the position of neither of the parties has been mollified. Accordingly, in light of the fact that plaintiff has been called to active duty effective June 28, 1982, the Court has scheduled this hearing to determine the merits of the complaint, both parties having agreed that the urgency of the matter necessitated immediate resolution by the Court.

*Statement of the Facts*

The facts which precipitated the instant controversy are not in dispute.[1] On September 18, 1979, plaintiff, who then was a senior-year student at Ohio Wesleyan University, Delaware, Ohio, executed an Air Force Reserve Officers' Training Corps contract. The Air Force agreed, *inter alia*, to provide plaintiff a monthly subsistence allowance while plaintiff was a member of the AFROTC program at the rate prescribed by law for a period not to exceed twenty months. Plaintiff agreed to obtain a baccalaureate degree, to enter upon and continue military training in the AFROTC program, and to accept an appointment as a commissioned officer in the United States Air Force.

Plaintiff attended AFROTC courses at Ohio State University while continuing his regular studies at Ohio Wesleyan and, eventually received his undergraduate degree on July 31, 1980. Plaintiff's transfer from the AFROTC detachment at Ohio State to the detachment at the University of Maryland was approved by the Air Force on August 19, 1980, effective September, 1980. Subsistence payments were made to plaintiff in

a total amount of $833.33 during the nine-month period in which he attended AFROTC classes at Ohio State—September, 1979 to May, 1980. During the period June, 1980 until early December, 1980, plaintiff received no subsistence payments. On November 28, 1980, the Air Force issued a check to plaintiff in the amount of $420.00, and plaintiff returned the check to the AFROTC detachment at the University of Maryland.

By letter dated December 2, 1980, plaintiff notified the Commander of the AFROTC Detachment 330, University of Maryland, that, because of the failure of the Air Force to pay his AFROTC course tuition and transportation expenses and the failure to remit the monthly subsistence payments since June, 1980, he "consider[ed] the contract no longer binding and ... [was] withdraw[ing] from the program." Plaintiff continued his AFROTC coursework at the University of Maryland for the fall semester of 1980, but did not enroll in any AFROTC courses in the spring, 1981 semester.

Plaintiff was advised on January 20, 1981, that AFROTC disenrollment proceedings might be brought because of his breach of the enlistment contract and, further, that he might be called to active duty in his enlisted grade. Thereafter, on March 24, 1981, a disenrollment hearing was held at the University of Maryland, at which hearing plaintiff appeared with counsel. The hearing officer, an AFROTC faculty member, issued his report on April 14, 1981, and determined that plaintiff had breached his AFROTC contract. The Secretary of the Air Force issued an order on July 7, 1981, calling plaintiff to active duty in the United States Air Force Reserve (in an enlisted grade) for a two-year period commencing August 31, 1981.

The original action filed in this Court on August 27, 1981 (Civil Action No. N–81–2181) sought a temporary and permanent injunction restraining the Secretary of the Air Force from calling plaintiff to active duty and a declaration that the action of

---

1. *See* Stipulation filed September 4, 1981, Civil Action No. N–81–2181.

the Secretary was illegal. A hearing on the merits was held on September 4, 1981, at which time this Court ordered that plaintiff be made to exhaust his administrative remedy before the Air Force Board of Correction of Military Records and that the Secretary of the Air Force be enjoined from calling plaintiff to active duty during the pendency of the proceeding before the Correction Board.[2] Defendant noticed his appeal from that Order on November 3, 1981. By order of the United States Court of Appeals for the Fourth Circuit filed on March 9, 1982, the appeal was dismissed pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure.

On April 19, 1982, the Correction Board rendered its determination on the basis of the documents submitted by plaintiff, and without a hearing, that "[i]nsufficient relevant evidence [had] been presented to demonstrate the existence of probable error or injustice." The Correction Board concluded that, although as a general rule subsistence payments are made on a monthly basis, the delay in remitting payments to plaintiff was not willful, but rather was caused by plaintiff's transfer from the Ohio detachment to the Maryland detachment. Further, the Correction Board concluded that the Air Force had not undertaken to pay plaintiff's tuition and travel in connection with the AFROTC coursework and, therefore, had not violated the enlistment contract.

## DISCUSSION

### A. *Venue*

■ The defendant Secretary of the Air Force challenges venue in this District for the reason that none of the venue-determining factors, set forth in 28 U.S.C. § 1391(e), exist or arose in this District. The Court has determined that the defendant's challenge is without merit.

Although the matter now comes before the Court following the action of the Air Force Board of Correction of Military Records, the operative events, namely, the al-

leged non-payment of AFROTC course tuition and subsistence, occurred in, and have their nexus with the State of Maryland. More specifically, the alleged breach of the AFROTC enlistment contract by the defendant occurred while plaintiff was undergoing AFROTC training at the University of Maryland, whereat his monthly subsistence payments were allegedly wrongfully withheld and/or delayed and payment of tuition for his AFROTC coursework tuition was not made.

■ This conclusion comports with the rule that a claim arises generally where the injury occurs. *Quinn v. Bowmar Publishing Co.*, 445 F.Supp. 780, 783 (D.Md.1978). *See also, Gardner Engineering Corp. v. Page Engineering Co.*, 484 F.2d 27, 33 (8th Cir. 1973) (venue in breach of contract action proper in district where performance was to have been rendered).

### B. *Scope of Review and Merits*

The Secretary of the Air Force submits that the proper scope of review, in this instance, is whether the determination and final action of the Board of Correction was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A) and, therefore, *de novo* review of plaintiff's contract claim is not authorized.

Inasmuch as the administrative body's decision in this case, which involves a contract dispute, must accord with general principles of contract law, there is no real concern here as to whether or not *de novo* review is appropriate. As a consequence, the two issues before the Court are: (1) whether the failure of the Air Force to pay plaintiff the $100.00 monthly subsistence payments in a timely fashion (that is, payment of $100.00 *each* month) constituted a material breach of the contract of enlistment between plaintiff and the Air Force; and (2) whether the failure of the Air Force to pay or reimburse plaintiff for AFROTC course tuition at the University of Maryland and transportation to and from his home in Fairfax, constitut-

---

**2.** *See* Appendix A hereto.

ed a material breach of the contract of enlistment between plaintiff and the Air Force.

Plaintiff essentially makes an estoppel argument as to his claim that the Air Force was bound to pay him $100.00 each month during the period he was enrolled in the ROTC program. *See* 37 U.S.C. § 209(a);[3] 10 U.S.C. § 2104; *see also*, promotional literature attached as exhibits to application to Board of Correction.

■ Rescission of a contract may be had, *inter alia*, where the breach of the contract "substantially defeats its purpose," or where the breach is material and willful, or where the breach is so substantial and fundamental "as to strongly tend to defeat the object of the parties in making the contract." 12 *Williston on Contracts*, § 1467, p. 188 (3d ed. 1970); *Affiliated Hospital Products, Inc. v. Merdel Game Mfg. Co.*, 513 F.2d 1183 (2d Cir. 1975); *Fairchild Stratos Corp. v. Siegler Corp.*, 225 F.Supp. 135 (D.Md.1963); *Speed v. Bailey*, 153 Md. 655, 139 A. 534 (1927).

■ Plaintiff cannot reasonably argue that the essential benefit to him under the Air Force ROTC enlistment contract was the receipt of the monthly subsistence payments. Admittedly, the inducement to enter into the commitment was the promise by the Air Force that plaintiff would receive an officer's commission upon the successful completion of undergraduate and AFROTC coursework, among other requirements. The delay in receiving the subsistence payments did not alter or affect in any manner, the prime benefit plaintiff was to have received pursuant to his agreement with the Air Force.

Apart from the innuendos that plaintiff was not warmly received in the new AF-ROTC detachment at the University of Maryland and that individuals there may not have acted diligently in ensuring plain-

tiff's records were transferred from Ohio State University, there is no indication that the representatives or agents of the AF-ROTC detachment at the University of Maryland or any other agents of the Air Force acted wantonly or maliciously in the processing of plaintiff's monthly subsistence payments.

The nature of the undertakings and the facts here are not analogous to contractual undertakings where delayed performance might constitute a material breach of the contract, such as building contracts or contracts requiring installment payments. *See United States v. Southern Construction Co.*, 293 F.2d 493 (6th Cir. 1961), *cert. granted*, 368 U.S. 975, 82 S.Ct. 478, 7 L.Ed.2d 437, *rev'd in part*, 371 U.S. 57, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962); *United States v. Western Casualty & Surety Co.*, 498 F.2d 335 (9th Cir. 1974).

The delay in forwarding subsistence payments to the plaintiff was reasonably caused by his transfer to the Maryland AF-ROTC program from the Ohio AFROTC program and, the necessary transfer of plaintiff's records, and, in no event, constituted a material breach of the contract between plaintiff and the Air Force such as would legally justify termination of plaintiff's performance.

■ Plaintiff also contends that the Air Force breached the contract of enlistment because of its failure to pay for plaintiff's AFROTC coursework at the University of Maryland and his transportation expenses to and from his residence in Fairfax, Virginia. The contract of enlistment executed by plaintiff and a representative of the Air Force on September 18, 1979, and the provision of 10 U.S.C. § 2104 are the sources of the duties of plaintiff and the Air Force. Plaintiff contends that the language of 10 U.S.C. § 2104(a) mandates that the Air Force pay the tuition for AFROTC course-

---

**3.** The full text of 37 U.S.C. § 209(a) reads: "Except when on active duty, a member of the Senior Reserve Officers' Training Corps who is selected for advanced training under section 2104 of title 10 [10 U.S.C. § 2104] is entitled to a subsistence allowance of $100.00 a month beginning on the day he starts advanced training and ending upon the completion of his instruction under that section, but in no event shall any member receive such pay for more than 20 months.

work for persons enrolled in the program. The section states that "[a]dvanced training shall be provided to eligible members of the program ... who have 2 academic years remaining at such institution." Subsection (b) sets out the eligibility requirements for acceptance into the advanced training program.

Plaintiff contends that, under the terms of the agreement, he agreed as follows: [T]o enter upon and continue military education in an AFROTC program, to obtain a baccalaureate degree and to accept an appointment as a commissioned officer in the United States Air Force. Defendant, the Secretary of the Air Force, agreed, *inter alia*, to pay plaintiff a subsistence allowance ... and to provide plaintiff with advanced AFROTC training.

*See* Complaint at paragraph 4. Plaintiff admits that he was not a scholarship candidate; *but see* Stipulation, Civil Action No. N–81–2181.

Plaintiff was selected to be a candidate in the Professional Officer Course program, which means that his selection for AFROTC membership was made pursuant to 10 U.S.C. § 2104. Selection for AFROTC membership could also be made pursuant to 10 U.S.C. § 2107, entitled "Financial Assistance Program for Specially Selected Members," whereby the selectee would be a member of the "College Scholarship Program." The difference in benefits accruing to members of these two programs is substantial. As with a candidate appointed pursuant to § 2104, a scholarship program candidate is entitled to a monthly subsistence allowance of $100.00. 37 U.S.C. § 209(b). In addition, the scholarship candidate, as that term implies, is provided with payment of tuition, books and fees. 10 U.S.C. § 2107(c); *see also* Air Force Reserve Officers' Training Corps Contract, paragraph 2.a.

Plaintiff states that it was his "understanding" that the Air Force would pay his AFROTC course tuition while at the University of Maryland based on his experience while at Ohio Wesleyan University and Ohio State University. Defendant has responded in related proceeding No. N–81–2181, that the Air Force had not paid for plaintiff's AFROTC coursework at Ohio State University, but that the exchange arrangement was a voluntary one between the two universities. Under the consortium arrangement, Ohio State University, which hosted the AFROTC program, permitted cross-enrollment of students attending non-host schools, such as Ohio Wesleyan University. The AFROTC coursework is treated like any other course; that is to say, the student pays the normal credit hour tuition and receives academic credits for the course. Pursuant to the arrangement, the full-time student tuition paid by plaintiff at Ohio Wesleyan University covered the tuition for AFROTC classes taken at Ohio State University, on a fee-splitting basis.

Plaintiff has never disputed this as accurately representing the arrangement. Nor has plaintiff ever contended that the situation had been misrepresented to him by Air Force agents or representatives at the time he signed the enlistment contract. *Compare Novak v. Rumsfeld*, 423 F.Supp. 971 (N.D.Cal.1976) (where the trial court determined that the Navy breached its contractual obligation by failing to adequately apprise prospective recruits into the nuclear training program of the rigorous qualifying criteria for specialized training, where such specialized training was the inducement for signing a four-year enlistment contract and a two-year extension agreement).

The contract between the plaintiff and the Air Force is clear and unambiguous and sets out the mutual obligations of the parties. There is no provision in the contract whereby the Air Force agrees to pay directly or to reimburse enrollees for AFROTC coursework tuition. Neither do the pertinent Air Force regulations, 32 C.F.R. § 870.0, *et seq.* (1981), state that the Air Force will provide tuition-free or tuition-reimbursement for AFROTC coursework taken by non-scholarship candidates.

Accordingly, the Court determines that the Air Force is under no mandate, either by the terms of the AFROTC enlistment

contract executed by it and plaintiff, or the terms of the statute establishing the Senior Reserve Officers' Training Program, to pay or to reimburse plaintiff for AFROTC coursework at the University of Maryland, or any other institution. Rather, the language of 10 U.S.C. § 2104, on which plaintiff relies to create such an obligation on the part of the Air Force, constitutes a Congressional mandate to the Air Force and the other armed forces to establish advanced officer training programs.

Pursuant to the authority vested in the Secretary of the Air Force, under 10 U.S.C. § 2105, plaintiff was properly ordered to active duty in enlisted status as a result of his failure to complete the course of AFROTC instruction, as agreed to pursuant to the enlistment contract of September 18, 1979.

The Court notes for the record that the order entered on September 4, 1981, enjoining the Secretary of the Air Force from calling plaintiff to active duty during the pendency of the proceedings before the Correction Board expired upon completion of that proceeding. Plaintiff's motion for a preliminary injunction is denied, and plaintiff's complaint is dismissed, with prejudice.

A separate Order was issued on this memorandum opinion by me on June 21, 1982.

The Clerk of Court is hereby directed to transmit copies of this memorandum opinion and my Order of June 21, 1982 to counsel of record for the parties hereto.

## APPENDIX A

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

MICHAEL MANSFIELD : 

v. : CIVIL ACTION NO. N–81–2181

:

HONORABLE VERNE ORR,
Secretary of the Air Force :

---

Filed: November 4th, 1981. Edited transcription of oral opinion rendered in open court at the conclusion of hearing on September 4, 1981.

William Connelly, of Oxon Hill, Maryland, for plaintiff.

Glenda G. Gordon, Assistant United States Attorney for the District of Maryland, and Captain Thomas J. Fiscus, of the General Litigation Division, United States Air Force, for defendant.

NORTHROP, Senior District Judge.

### Background of the Proceedings

On August 27, 1981, plaintiff, Michael Mansfield, filed motions for a temporary restraining order and a preliminary injunction, and a complaint for declaratory and permanent injunctive relief against the Secretary of the Air Force, seeking to permanently enjoin the Air Force from calling plaintiff to active duty. The opposition and motion to dismiss of defendant was filed on August 28, 1981. The matter came before the Court for a hearing on August 28, 1981. At that time, defendant consented to a stay of the order directing plaintiff to report for active duty at Lackland Air Force Base on Monday, August 31, 1981, in order that a further hearing on this matter might be had on September 4, 1981. The Court requested the parties to submit supplemental memoranda for its review.

The Court has examined the memoranda submitted on behalf of the parties and the pertinent case law, and has considered the oral argument presented by counsel for the parties on September 4, 1981. Pursuant to the Court's oral ruling at the conclusion of that hearing, and for the following reasons, plaintiff's motion for injunctive relief has

been granted by Order dated September 4, 1981.

## Facts

Plaintiff alleges that the order directing him to report for active duty in the Air Force is null and void for the reason that he rightfully terminated his ROTC contract with the Air Force because of its failure to provide him monthly subsistence payments and reimbursement for tuition and expenses incident to his attendance of ROTC classes at the University of Maryland. Defendant alleges that plaintiff is in breach of his ROTC contract because of his failure to continue in the program and that such breach entitles defendant to call plaintiff to active duty at his enlisted rank. The parties have stipulated to the facts and those facts are adopted herein.

## Exhaustion of Administrative Remedies

The parties take adverse positions with respect to the issue of whether plaintiff must exhaust the remedies available to him within the Air Force structure before seeking relief from this Court. Defendant contends that plaintiff has failed to exhaust available administrative remedies, namely, review by the Air Force Board of Correction of Military Records ("AFBCMR"). 10 U.S.C. § 1552, 32 C.F.R. § 865.1 *et seq.* Plaintiff urges that the exhaustion of remedies doctrine should be mollified in this instance inasmuch as he would be required to report for active duty before the time the Board issues a decision. Subsequent to filing the motions and complaint herein, plaintiff filed an application for relief with that body.

The Court will address the factors which the federal district courts have considered in determining whether an exception to the exhaustion doctrine is warranted in this case. *See Seepe v. Department of the Navy,* 518 F.2d 760, 762 (6th Cir. 1975). The first inquiry is whether further administrative review would be futile. The statute creating the Board empowers the secretary, acting through the Board, to "correct any military record ... when he considers

it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552. Plaintiff has made no allegation that the Board lacks jurisdiction over the subject matter and, consequently, resort to it would be futile. Irrespective of the reasons that prompted plaintiff to not avail himself of that avenue in the first instance, it is clear that plaintiff does recognize the Board as an appropriate body to adjudicate his grievance and has, subsequent to his initial appearance, filed an application with the Board for relief.

The second inquiry is whether the *status quo* under the administrative decision pending review would itself constitute a handicap or leave the plaintiff in an emergency situation. This inquiry is a more difficult one. Had plaintiff made petition for relief to the Board immediately upon issuance of the report of the disenrollment hearing in April, 1981, the *status quo* pending review might not have constituted a hardship. Likewise, had plaintiff acted in a timely fashion to seek relief from the Board in July, when he was called to active duty effective August 31, 1981, he might not be in the present predicament. Nevertheless, the Court recognizes that plaintiff did not act in bad faith and, further, that undue hardship to plaintiff would ensue were the July 9, 1981, order to be enforced. Therefore, the Court has taken these matters into consideration and has addressed them further in a subsequent part of this opinion.

Another factor to be considered is whether the complaint involves merely a matter of law or a matter requiring application of military expertise. Plaintiff's claim, on its face, involves a question of contract law. Additionally, however, the complaint raises a question of whether the Air Force is required to pay tuition and transportation costs to plaintiff under 10 U.S.C. § 2104(a). It was stipulated by the parties that plaintiff was a non-scholarship cadet. Arguably, resolution of the matter of payment of these expenses will involve interpretation and application of pertinent Air Force regulations, together with an assessment of the internal process of the Air Force for selecting persons to participate in the scholarship

program. Further, plaintiff's complaint and motions raise the question of when the subsistence payments must be paid under 37 U.S.C. § 209. This is a matter presumably controlled by Air Force policies and its internal workings and a matter important to the issue of whether the Air Force breached its contract with plaintiff.

On balance, the Court concludes that review by the AFBCMR, in this instance, is appropriate. Further, there are equities in favor of plaintiff which the Board, when fashioning relief in this case, might be able to take into consideration in light of its mandate to "correct injustices."

### Injunctive Relief

The decision to grant a preliminary injunction is discretionary with the court and should rest upon a consideration of the following factors:

1. the threat of irreparable injury to plaintiff should preliminary relief be denied;

2. injury to other parties should the injunction issue;

3. the probability that plaintiff will succeed on the merits; and

4. the interests of the public.

*Conservation Council of North Carolina v. Costanzo,* 505 F.2d 498, 502 (4th Cir. 1974).

Defendant argues that plaintiff carries a more onerous burden in this instance because the granting of an injunction would have a disruptive effect upon the administrative process. The case upon which defendant relies is distinguishable in a significant way. In *Sampson v. Murray,* 415 U.S. 61 [94 S.Ct. 937, 39 L.Ed.2d 166] (1974), the Supreme Court had an overriding concern that the courts not interfere with the wide latitude that the federal government has traditionally exercised in the dispatch of its own affairs, namely, in regulating employees of the Civil Service Commission. Although *Sampson,* an employee discharge case, and the present case are similar in that they both involve the regulation of employees or putative employees, that is not enough to render *Sampson* controlling here.

In granting the stay and reinstating the discharged employee, the district court in *Sampson* was acting contrary to specific regulations of the Civil Service Commission, which provided that the discharge was to remain in effect until the Commission heard the appeal on its merits. Further, the statute provided the specific remedy of backpay for cases of improper dismissal. Important also was the fact that the employee was on probationary status only. When these relevant factors are considered, it is clear that no such intrusion upon the internal affairs of defendant would result were this Court to grant a stay of the Air Force order. Plaintiff is, as of this date, a civilian and, although for some purposes, such as exhaustion of remedies, within the jurisdiction of the Air Force, plaintiff is in nowise subject to the strictures of Air Force process and procedure. By seeking injunctive relief, plaintiff is not circumventing or undermining any internal procedures, which specifically preclude the type of relief which he asks of this Court.

### a. Threat of Irreparable Harm

While it is true that mere economic harm is not sufficient to constitute irreparable injury, the allegations of harm to this plaintiff are more particularized and significantly more substantial. Were the Air Force order to stand intact, plaintiff would face a significant disruption of his professional and educational plans for an indefinite period of time. Currently, he is enrolled in George Mason University in Virginia and imminently will commence graduate studies. Further, plaintiff would be forced to enter service in the rank of an enlisted person rather than at the rank of a commissioned officer. This, likewise, constitutes a significant and needless deprivation to plaintiff. Importantly, there has been no representation by the Air Force as to when review of plaintiff's petition by the Board will be completed. Arguably, that review might not be completed until such time as plaintiff's two-year commitment is served in part or in total. In that event, there is

no remedy—monetary or otherwise—which could compensate plaintiff for the losses he will have sustained.

b. *Injury to Other Parties and to the Public*

Defendant contends that the orderly administration of military training could be seriously disrupted were persons, such as plaintiff, able to avoid or postpone their obligations to serve by late-hour resort to the courts. The Court does not agree. The primary focus should be, and must be, the fair administration of the commitments made between the military services and persons who voluntarily elect to enter into their employment. However, persons entering upon such a commitment should have the opportunity to adjudicate grievances growing out of that relation without having to place themselves in the precarious position, such as plaintiff faces. Plaintiff seeks to test the validity of the order directing him to report for active duty for reasons which, if proven, would allow termination of the contract between plaintiff and defendant.

Further, the public interest will be better served by the knowledge that the military conducts its affairs in the most judicious manner. The continued recruitment of young, competent, and able persons into the military depends upon the assurance that such a commitment will be beneficial to their educational and professional development, as well as being beneficial to the military.

c. *Probability that Plaintiff Will Succeed on the Merits*

Plaintiff need not prove with absolute certainty that he will prevail on the merits. A full factual record has not been developed. Nevertheless, those facts which have been presented do not, on their face, demonstrate that he will be unable to succeed on the merits. There are equities in the favor of plaintiff. The facts indicate that plaintiff made a good-faith effort to resolve the matter of the unpaid subsistence allotments which were due him under the terms of the ROTC contract. After waiting a considerable period of time and without having any success, plaintiff treated the contract as terminated. Concurrent with plaintiff's termination of the contract, the Air Force made remittance to him of the unpaid subsistence allotments.

In weighing all of these factors, and after balancing the interests of the parties, the Court has concluded that the granting of a preliminary injunction is appropriate. Accordingly, plaintiff's motion for a preliminary injunction has been granted, and the order of defendant dated July 9, 1981 has been stayed pending completion of the proceedings before the Air Force Board of Correction of Military Records. (*See* Order dated September 4, 1981). Plaintiff's amended complaint seeking declaratory and permanent injunctive relief has been dismissed (*See* Order dated September 9, 1981), but plaintiff shall not otherwise be prejudiced from seeking review in this court after the final decision of the Air Force Board is rendered.