Gilbert MICELI, et al., Plaintiffs,

v.

Peter STROMER, et al., Defendants.

Civ. A. No. 87–C–835.

United States District Court,
D. Colorado.

Dec. 29, 1987.

Michael S. Kupecz, Aurora, Colo., for plaintiffs.

Elaine A. Menter, Pryor, Carney & Johnson, Englewood, Colo., for defendants.

## ORDER

CARRIGAN, District Judge.

Plaintiffs Gilbert and Monica Miceli commenced this action alleging that the defendants Universal Life Church, Inc. ("ULC") and Peter R. Stromer fraudulently induced them to seek unsuccessfully a goal prized by some second only to eternal salvation: tax-exempt status as a religious charitable organization.

According to the complaint, ULC was a corporation established to organize and operate a religious order or "church" whose members, for a fee, could become ordained

ministers, receive doctorate degrees in religious humanities, biblical studies, divinity, "universal life," metaphysics, or religious science. For an additional fee, a member could receive a "sainthood certificate."[1] Plaintiffs allege that they joined ULC and formed the "Miceli ministry" in reliance on ULC's promise that operation of the ministry would provide them tax-exempt status as a charitable organization.

Further, the complaint alleges, the plaintiffs paid the defendant ULC a $1,250 initiation fee to obtain authority to establish the "Miceli ministry." ULC had promised the plaintiffs that: (1) money paid into the ministry by the plaintiffs would be deductible for income tax purposes as charitable contributions, and (2) sums paid out of the ministry to the plaintiffs and their creditors would also be deductible.

Unfortunately for the plaintiffs, the Internal Revenue Service ("IRS") was found among those of little faith in the "Miceli ministry," and it denied the claimed charitable deductions. After denial of the deductions, ULC recommended that the plaintiffs consult the defendant Stromer, a tax attorney licensed to practice in California. Plaintiffs retained Stromer to represent them in seeking redeterminations of their 1980–82 income taxes. Stromer too failed to convert the IRS, and it continued to deny the claimed charitable deductions.

Four claims for relief are set out in the complaint. First it is asserted that ULC engaged in fraud, intentional misrepresentation, and concealment when it induced the plaintiffs to join ULC and pay it fees for establishing their ministry. Second it is claimed that ULC and Stromer are liable under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Third, legal malpractice is alleged against Stromer. Fourth ULC is charged with negligent misrepresentation in referring the plaintiffs to Stromer.

Defendants have jointly moved for: (1) dismissal under Fed.R.Civ.P. 12(b)(3) for improper venue; (2) transfer of venue under 28 U.S.C. § 1404(a); and (3) a stay of discovery pending resolution of these motions. Defendant Stromer, additionally, has moved under Fed.R.Civ.P. 12(b)(2) for dismissal for lack of jurisdiction over his person. The issues have been briefed and oral argument was heard on December 4, 1987, with respect to the question of whether personal jurisdiction exists over the defendant Stromer. Because dismissal as against the defendant Stromer would affect consideration of the motions regarding venue, I shall discuss the personal jurisdiction issue first.

### 1. *Stromer's Motion to Dismiss for Lack of Personal Jurisdiction.*

Defendant Stromer contends that this action should be dismissed as against him for lack of personal jurisdiction.

■ Plaintiffs have invoked subject matter jurisdiction on the basis of diversity of citizenship under 28 U.S.C. § 1332. In a diversity case personal jurisdiction is determined under the law of the state where the court sits, with "federal law" entering the picture only if it becomes necessary to decide whether a state's assertion of jurisdiction violates federal due process. *Halliburton Co. v. Texana Oil Co.*, 471 F.Supp. 1017, 1018 (D.Colo.1979); *Associated Inns and Restaurant Co. v. Development Assocs.*, 516 F.Supp. 1023 (D.Colo.1981).

While § 1332 applies to the plaintiffs' state law negligence claim against the defendant Stromer, they have also sued Stromer under RICO. Federal question jurisdiction, therefore, supports the RICO claim (28 U.S.C. § 1331). For purposes of deciding the question of jurisdiction over Stromer's person, however, it makes little difference whether subject matter jurisdiction is based on diversity or a federal question, because the Colorado Supreme Court's interpretation of Colorado's long-arm statute extends jurisdiction to the maximum extent allowed by federal due process. *Mr. Steak, Inc. v. District Court*, 194 Colo. 519, 521, 574 P.2d 95, 96 (1978). Moreover,

---

**1.** Sainthood, of course, is a status within the jurisdiction of a higher court, upon which this opinion does not presume to express views. Suffice it to say that the usual prerequisite of death was not required.

a federal court may assert jurisdiction over a non-resident defendant pursuant to the long-arm statute of the state where it sits, "if the statute is complied with and the assertion of jurisdiction is consistent with constitutional due process." 2A J. Moore, *Moore's Federal Practice* para. 12.07[2.–2], at 12–60 (2d ed. 1987).

Colorado's long-arm statute provides that Colorado courts have jurisdiction over any cause of action arising from "[t]he transaction of any business within this state," and "[t]he commission of a tortious act within this state...." Colo.Rev.Stat. § 13–1–124(a), (c). Resolution of jurisdictional issues under the Colorado long-arm statute frequently involves ad hoc factual analysis. *Waterval v. District Court*, 620 P.2d 5, 9 (Colo.1980), *cert. denied*, 452 U.S. 960, 101 S.Ct. 3108, 69 L.Ed.2d 971 (1981).

Personal jurisdiction may not be assumed over a nonresident defendant unless the defendant has minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). *See Burger King v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). A nonresident defendant must by words or conduct purposefully avail himself of the laws of the forum state to an extent which implies that the defendant "should reasonably anticipate being haled into court there." *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

Courts applying Colorado law consistently have distinguished "between cases in which jurisdiction is sought based on a single isolated incident, and cases in which jurisdiction is predicated on allegations of continuous, substantial conduct in the forum state." *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 734 (10th Cir.1984), *cert. denied*, 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985). Where a single act or a minimum contact is the basis of jurisdiction, Colorado has adopted a three-pronged test to determine whether the activity of the nonresident may support *in personam* jurisdiction:

(1) "the defendant must purposely avail himself of the privilege of acting in the forum state or of causing important consequences in that state;"

(2) "the cause of action must arise from the consequences in the forum state of the defendant's activities;" and

(3) "the activities of the defendant or the consequences of those activities must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Van Schaak & Co. v. District Court*, 189 Colo. 145, 147, 538 P.2d 425, 426 (1975).

*See Sands v. Victor Equipment Co.*, 616 F.Supp. 1532 (D.Colo.1985).

In contrast, where "there are substantial continuous contacts with the forum state, jurisdiction may be found even when the cause of action does not arise out of the forum-related activity." *Waterval v. District Court*, 620 P.2d 5, 9 (Colo.1980). *See Behagen, supra,* 744 F.2d 731; *Le Manufacture Francaise v. District Court*, 620 P.2d 1040 (Colo.1980).

 The burden of establishing personal jurisdiction is always on the party asserting it. *Moore's, supra,* at 12–55. "The allegations of the complaint as well as any evidence introduced by the parties at any hearing conducted to determine the jurisdictional issue may be considered to determine whether the plaintiff has established [a] prima facie showing of jurisdiction." *Scheuer v. District Court*, 684 P.2d 249, 251 (Colo.1984).

 Initially, I conclude that the plaintiffs' allegation that Stromer negligently represented the plaintiffs satisfies the statutory requirement of the commission of a tortious act within Colorado. "[N]egligent conduct in a foreign state which causes injury in Colorado may be deemed an act committed within Colorado for purposes of the long-arm statute." *Id.* I thus turn to the question of whether federal due process standards are satisfied here.

The relevant inquiry is whether the contacts alleged by the plaintiffs are sufficient to enable this court to assume jurisdiction over Stromer. Because the "single act" or "minimum contact" of the defendant Stromer in representing the plaintiffs is the basis of jurisdiction here, I shall apply the *Van Schaak* test, as opposed to the "substantial and continuous contact" test, to determine whether asserting personal jurisdiction over Stromer complies with due process.

The first prong of the *Van Schaak* test is the requirement that the nonresident defendant have "purposefully availed himself of the privilege of acting in the forum state or of causing important consequences in that state." Whether a defendant "has purposefully availed himself of the privilege of conducting activities in Colorado depends on the quality and nature of such defendant's conduct in Colorado as well as the frequency of such conduct." *Scheuer, supra*, 684 P.2d at 251.

Plaintiffs insist that there is personal jurisdiction over the defendant Stromer because Stromer purposefully availed himself of the privilege of conducting activities in Colorado. More specifically, they allege that Stromer:

(1) represented the plaintiffs continuously from February 1984 through April 1986, and that their substantial interests in Colorado were adversely affected by Stromer's representation of the plaintiffs; and

(2) regularly promoted himself in Colorado, through acts of his agents, as the attorney for the defendant ULC, and as an attorney willing and able to represent taxpayers before the IRS in matters relating to taxpayers' charitable contributions to the ULC.

(Plaintiffs' response, at 2) (*see* Affidavit of Gilbert Miceli, at 7–11).

According to the complaint, Stromer is a resident of California licensed to practice law in that state. He is a principal in ULC and has represented the latter in its tax controversies with the IRS. Moreover, ULC regularly refers to him, as clients, persons, like these plaintiffs, who have become embroiled in tax problems because of their reliance on ULC's representations. Plaintiffs paid Stromer a $5000 retainer fee to represent them before the United States Tax Court in California in their effort to obtain a redetermination of their 1980, 1981 and 1982 income taxes.

Paragraph 36 of the complaint alleges that Stromer was negligent with regard to, but not limited to, his:

(1) failure to file a Power of Attorney with regard to the plaintiff's 1982 Form 1040 taxes;

(2) failure to respond within the time allowed to the statutory notice of deficiency regarding the plaintiffs' 1982 Form 1040 taxes; and

(3) failure to advise the plaintiffs adequately of their situation and the risks they were taking.

In *Scheuer, supra*, the Colorado Supreme Court court held that personal jurisdiction existed over a New Mexico attorney who had represented a Colorado corporation for approximately two years and who had negligently disbursed the corporation's funds from his trust account. There, the lawyer allegedly had: (1) accepted employment as an attorney for a Colorado corporation; (2) conferred by telephone with the corporation's agent concerning the corporation's financial interests that he had been retained to represent; and (3) collected a substantial fee for representing the Colorado corporation. The court concluded that the attorney had "purposefully availed himself of the privilege of transacting business in Colorado," and that he "should reasonably have anticipated that he would be subject to the personal jurisdiction of Colorado's courts as a consequence of his representation" of the Colorado corporation. *Id.* at 252.

Another case supporting the assertion of *in personam* jurisdiction over Stromer is *Waterval, supra*, 620 P.2d 5 (Colo.1980). There, the plaintiff sued a Virginia attorney for alleged negligence and breach of fiduciary duty, and the Colorado Supreme Court upheld personal jurisdiction over the attorney. The court held that assertion of *in personam* jurisdiction over the lawyer

was reasonable because the acts of the attorney, though intermittent rather than continuous, were of sufficient duration and significance to affect his client's interests in Colorado.

The instant case is legally indistinguishable from *Scheuer*. According to the allegations in the complaint and the documents submitted by the plaintiffs, the defendant Stromer: (1) accepted employment as an attorney for Colorado plaintiffs; (2) collected a substantial fee for that representation; (3) represented the plaintiffs for approximately two years; and (4) was negligent in his representation of the plaintiff's interests. Thus under the reasoning of *Scheuer*, I conclude that Stromer purposefully availed himself of the privilege of transacting business in Colorado.

I further conclude that the second prong of the *Van Schaak* test is satisfied here because the plaintiffs' claims against Stromer arise from the consequences *in Colorado* of Stromer's representing them.

Finally, I conclude that the third prong of the *Van Schaak* test is satisfied. In *Scheuer*, the court held that the consequences of the nonresident attorney's representation of the Colorado corporation were "sufficiently connected to Colorado's sovereign interests in protecting the legal rights of its citizens to satisfy the substantial connection element [*i.e.* the third prong] of the due process test articulated in *Van Schaak*." 684 P.2d at 252.

Here, it is quite possible that the defendant Stromer's activities in representing the plaintiffs had a substantial enough connection with Colorado to make the exercise of jurisdiction over Stromer reasonable. Yet an additional fact is presented here that was not found in *Scheuer*. According to the documents submitted by the plaintiffs, Stromer's agents actively solicited clients for Stromer in Colorado. (See Affidavit of Gilbert Miceli, at 7–11.)

Plaintiffs allege, for example, that a Colorado-based representative of the defendant ULC, the Reverend Willie Conklin, gave them periodicals that promoted the defendant Stromer as an attorney for ULC congregations embroiled in tax disputes. (*See Id.* para. 16.) They additionally assert that a Colorado-based board member of the defendant ULC, Cath Smith, and her husband, the Reverend Richard E. Smith, personally suggested that the plaintiffs retain the defendant Stromer to represent them in their dispute with the IRS. (*Id.* at para. 18.) Plaintiffs allegedly relied on the Smiths' suggestion and even sent Stromer one of Reverend Smith's business cards as a means of introduction. (*Id.* at para. 22; see Exhibit A–20 to the plaintiffs' response.) [2]

In *Scheuer*, the nonresident attorney contended that jurisdiction did not exist over him because he initially had been contacted by his Colorado client. The court deemed that fact "immaterial." 684 P.2d at 252. If the third prong of the *Van Schaak* test is satisfied with respect to a nonresident attorney who had no contact with Colorado prior to the time that his Colorado client contacted him, then *a fortiori*, the third prong of that test is satisfied with respect to a nonresident lawyer whose agents had actively solicited clients for him in Colorado prior to his representation of the Colorado plaintiffs who are suing him.

In support of his motion to dismiss for lack of personal jurisdiction, Stromer relies on this court's decision in *Beckman v. Carlson*, 553 F.Supp. 1049 (D.Colo.1983). In *Beckman*, the plaintiffs had obtained a state court judgment in Colorado and had retained two Montana attorneys to execute the judgment against the judgment debtor's real property located in Montana. The debtor, however, sold the property before the attorneys acted to enforce the judgment, and the plaintiffs then sued the lawyers for malpractice. Defendants moved

---

**2.** *See also* Affidavit of G. Miceli, para. 14 (alleging that the plaintiffs obtained a letter sent by the defendant Stromer to the Church of Universal Harmony indicating that he would act as legal counsel for the Church of Universal Harmony and defend it against legal attacks aimed at its chartered congregations, ministers, and individual members from any branch or agency of the federal or state governments. The letter also stated that the Church of Universal Harmony was an integral part of ULC.)

to dismiss for lack of personal jurisdiction and I granted the motion, reasoning that neither the activities of the defendant attorneys nor the consequences of those activities had a substantial enough connection with Colorado to render reasonable the exercise of *in personam* jurisdiction over the lawyers. *Beckman* is distinguishable from the instant action because unlike the purported solicitation of clients in Colorado by Stromer through agents, the nonresident attorneys in *Beckman* had not purposefully availed themselves of the privilege of transacting business in Colorado by seeking out Colorado clients.

Based on the allegations contained in the complaint and other documents filed by the plaintiffs, I conclude that Stromer purposefully availed himself of the privilege of transacting business in Colorado, and reasonably should have anticipated that he would be subject to the jurisdiction of courts in Colorado as a consequence of (1) his representation of the plaintiffs and (2) his agents' solicitation of clients for him in Colorado.

### 2. *Whether Venue is Proper in this District.*

Defendants contend that venue does not lie in this district because none of the defendants reside in Colorado. Under 28 U.S. C. § 1391(b), venue is proper only "in the district where all the defendants reside, or in which the claim arose...." This argument, at first blush, has certain appeal as to the diversity claims. But diversity is not the sole ground for jurisdiction. Plaintiffs have also asserted a federal claim under RICO. The special RICO venue rule found in 18 U.S.C. § 1965 provides that a RICO claim may be brought in the district where the defendant resides, is found, has an agent, or transacts his affairs. "[T]his venue provision is not intended to be exclusive, but rather is intended to liberalize the existing venue provisions of 28 U.S.C. § 1391(b)." *Ideal Stencil Machine and Tape Co. v. Merchiori*, 600 F.Supp. 185, 190 (S.D.Ill.1985).

Accordingly, venue in this case is determined by 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965(a), and venue is therefore proper

either where: (1) a defendant resides, is found, has an agent, or transacts his affairs; or (2) the claim "arose." It appears undisputed that neither defendant resides in Colorado. Plaintiffs, however, insist that ULC and Stromer have agents and transact their affairs in Colorado. I need only consider this contention if I do not conclude that the plaintiff's claims against ULC and Stromer arose in Colorado.

■ Determination of where "the claim arose" for purposes of federal venue under § 1391 is a federal question whose answer depends on federal law. *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183 n. 15, 99 S.Ct. 2710, 2716 n. 15, 61 L.Ed.2d 464 (1979). The prevailing test for venue under the "claim arising" provision of § 1391(b) is whether a substantial portion of the acts giving rise to the plaintiff's claim occurred in this district. *Johnson Creative Arts, Inc. v. Wool Masters, Inc.*, 573 F.Supp. 1106, 1112 (D.Mass.1983), *aff'd*, 743 F.2d 947 (1st Cir.1984); *Lamont v. Haig*, 590 F.2d 1124, 1134 (D.C.Cir.1978). In applying this test, the court must also consider the availability of witnesses, the accessibility of other relevant evidence and the convenience of the defendant. *Johnson*, at 1112. The correct approach to venue under the "claim arising" provision of § 1391(b), "must both consider litigative efficiency and examine whether the acts which occurred in the district and gave rise to the plaintiff's claims were substantial." *Id.* at 1113. *See Mansfield v. Orr*, 545 F.Supp. 118 (D.Md.1982) (claim arises generally where the injury occurs).

■ Although the instant plaintiffs resided in Virginia at the time they joined ULC, they moved to Colorado in December 1981, and they allege these contacts with Colorado for venue purposes:

(a) Plaintiffs' individual form 1040 tax returns for the years 1980–1982 were filed at the IRS office in Denver, Colorado;

(b) Plaintiffs were issued a certificate of ministry in the ULC by the defendant ULC and the certificate was mailed to the plaintiffs at their residence in Arvada, Colorado;

(c) Plaintiffs received mail including the "ULC News," the official newsletter of ULC, at their residence in Arvada;

(d) Plaintiffs conducted their ministry at their residence in Arvada; and

(e) Plaintiffs incurred damages in Colorado caused by the defendants' misconduct.

The crux of the plaintiffs' RICO claim is that ULC and Stromer promoted membership in ULC as a "tax avoidance" scheme, and that the plaintiffs' made contributions to their ULC ministry to take advantage of illusory tax benefits. These promotions allegedly were aimed by defendants at plaintiffs in the state of Colorado, where plaintiffs made supposed charitable contributions, filed tax returns and ultimately were thwarted by the IRS. (Plaintiffs' response, at 7.) Additionally, the plaintiffs assert that they made charitable contributions in Colorado, filed tax returns claiming those contributions as deductible charitable contributions in Colorado, and incurred damages in Colorado. (Complaint, paras. 14, 15) (Plaintiff Gilbert Miceli's affidavit, paras. 24–29). Finally, the plaintiffs allege that the defendant Stromer's negligence caused them to suffer injury in Colorado.

These allegations lead me to conclude, for purposes of the defendants' motion for change of venue, that a substantial number of the acts giving rise to the plaintiffs' claims against ULC and Stromer occurred in Colorado. I conclude, therefore, that the claims against ULC and Stromer arose in Colorado and venue is proper in this district.

3. *Transfer of Venue under § 1404(a).*

█ Defendants next assert that even if venue is proper in Colorado, the court should transfer venue to the United States District Court for the Northern District of California under 28 U.S.C. § 1404(a). That section provides:

"For the convenience of parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Because all defendants reside in the Northern District of California, venue would have been proper in that district. However, the inquiry does not end there. "The purpose of 28 U.S.C. § 1404(a) is to prevent waste of time and money, and to protect parties, witnesses, and litigants from unnecessary inconvenience and expense." *Resources Inv. Corp. v. Hughes Tool Co.*, 561 F.Supp. 1236, 1238 (D.Colo. 1983). Transfer of an action is within the district court's discretion. *In re Ralston Purina Co.*, 726 F.2d 1002 (4th Cir.1984).

Defendants seek a transfer on these grounds: (1) the majority of potential witnesses whose testimony will be essential to the defense reside in the Northern District of California; and (2) the majority of documents existing as sources of proof are located in the Northern District of California. (Defendants' brief, at 2.)

Nevertheless, a plaintiff's choice of forum is a factor deserving substantial weight in determining the question of transfer under § 1404(a). *Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955). Indeed, a plaintiff's choice is entitled to great weight and will not be lightly disturbed, especially where the plaintiff is a resident of the judicial district where the suit is filed. *See Houk v. Kimberly–Clark Corp.*, 613 F.Supp. 923 (W.D.Mo.1985). Plaintiffs reside in Colorado and this state is their forum of choice. Defendants have not submitted a sufficient reasons for disturbing the plaintiffs' choice.

Accordingly, IT IS ORDERED that:

(1) Defendant Peter R. Stromer's motion to dismiss for lack of personal jurisdiction is denied;

(2) Defendants' motion to dismiss for improper venue is denied;

(3) Defendants' motion for transfer of venue is denied; and

(4) Defendants shall file an answer to the complaint within 20 days after the date of this order.